## MERRIMACK COUNTY *v.* CONCORD.

A pauper notice is not required, to sustain an action brought by a county against a town, to recover sums paid for the support at the New-Hampshire Asylum for the Insane, of a person committed to the asylum by the judge of probate.

In such an action it is no defence that the town was not notified of the proceedings in the probate court.

The town is liable for the support of such person until he is discharged by three of the trustees of the Asylum, or by a justice of the Supreme Court.

ASSUMPSIT. The case was submitted upon the following agreed statement of facts :

Among the items claimed are payments made by the county for the support of Benjamin Green, at the Asylum for the Insane.

Said Green was originally committed to the asylum by order of the Court of Common Pleas, under the provisions

of section 24, of chapter 240, Revised Statutes, on an acquittal by the petit jury on account of insanity. He was subsequently duly discharged from the asylum by order of a justice of the Superior Court. Afterwards, in April, 1853, said Green was again committed to said asylum by order of the judge of probate for Merrimack county, in accordance with the provisions of section 11, chapter 9, Revised Statutes. The defendant had no notice of the proceedings in the probate court.

In November following, Jacob A. Potter was appointed guardian of said Green, then still in the asylum; and in December after, the guardian thinking that Green might, with safety to the public, be supported elsewhere at less expense, took him from the asylum for that purpose. Green remained away from the asylum about four weeks, and then returned to the asylum, and has remained there ever since. This removal from the asylum was with the assent of the superintendent, but without any knowledge or assent of any of the trustees, or by any other authority, as provided by law.

After Green's return to the asylum the guardian notified the superintendent that he had no means for the support of Green, and should not be responsible therefor, and all the charges for that support from the time of Green's commitment, in April, 1853, to March, 1858, have been paid by the county.

At the time of the appointment of the guardian there was about $100 in money belonging to Green, being on an allowance by the superintendent of the asylum for the labor of Green, after his original commitment by the Court of Common Pleas. This money was, soon after the appointment of the guardian, expended by him in the necessary relief of the family of his ward. There was also then belonging to Green an equity of redemption of certain real estate in Enfield, purchased by him several years previously. At the time

of the purchase he gave back a mortgage, to secure notes given in payment for the real estate. Payments had been made on those notes, but the amount still remaining due and unpaid on the notes was very nearly if not quite as much as the property was worth,—thus rendering the equity of redemption of very little if any value. The guardian made a claim against the vendors of the property at Enfield for the amount which had been paid by his ward on the purchase, on the ground that Green was insane at the time of the purchase, and that therefore he had a right to rescind the purchase, and recover back the sums paid on account of it. This claim remained in controversy, until finally, in 1858, it was adjusted, by the vendor's repaying to the guardian a certain sum, and taking back the property. This matter has not yet been fully closed, but the amount which will remain in the hands of the guardian, after costs, &c., will probably be about $600, as he expects.

Green has a settlement in Concord, and it is liable for his support when a pauper. He has a wife and two minor children, now living, but no relatives liable for his support. The insanity which existed at the time of Green's commitment to the asylum has continued ever since, and still exists.

No application has been made to the city of Concord for the relief of said Green, as a pauper, since his commitment to the asylum; and no notice of the sums paid by the county for his support at the asylum, in the form of pauper notices in ordinary cases, has been served upon the city, but proper demand was made on it for the sums paid, before the commencement of this suit.

The defendants reserve the right to a trial as to the question of the removal of said Green from the asylum, in the fall of 1853, having been without proper authority, so as to make a legal discharge therefrom, if they so desire.

Merrimack County *v.* Concord.

*Everett,* Solicitor, and *Minot & Mugridge,* for the plaintiff.

*Flint,* for the defendant.

Doe, J.* The statute provides, that if any insane person is in such condition as to render it dangerous that he should be at large, the judge of probate, upon petition of any person, and such notice to the selectmen of the town in which such insane person is, or to his guardian, or any other person, as the judge may order, which petition may be filed, notice issued and a hearing had in vacation or otherwise, may commit such insane person to the asylum. Any person so committed shall be supported by the county from which he was committed ; and any sum so paid may be recovered by the county of any county, town or person chargeable with his support, and that any person so committed may be discharged by any three of the trustees, or by any justice of the Superior Court. Rev. Stat., ch. 9, secs. 11, 15 and 17.

Pauper notices are not required to be given before commencing actions under this statute.

The agreed statement of facts shows that Green, at the time of his commitment to the asylum by the judge of probate, and until 1858, was sufficiently poor to be entitled to relief as a pauper, that he had a settlement in Concord, and had no relations liable to maintain him.

The manifest objects of the statute are to afford a summary mode of protecting society from the violence of insane, dangerous persons, and place them in a situation favorable to their cure. The judge of probate is to exercise his authority for those purposes, without consulting the pecuniary interests of towns or individuals, except as they might be affected by the destruction of property by the insane. Notice of the proceedings in the probate

* FOWLER and BELLOWS, J. J., did not sit.

court is left to the discretion of the judge.   The statute suggests notice to the selectmen of the town in which the insane person is, but not to the town or person chargeable with his support.   In most cases, probably, short notice would be ordered to the town in which the petitionee is, or to the town or person chargeable with his support. But it can no more be a matter of right that towns should have notice, and an opportunity to oppose the commitment of persons to the asylum, than that they should have notice of suits in which debtors might be committed to jail, where they might become paupers, or, if already paupers, the expense of maintaining them might be greatly increased.   *Amherst* v. *Hollis*, 9 N. H. 107.   The amount and kind of relief furnished by towns to paupers must depend upon the circumstances of the persons requiring it.   One may earn his living on the town farm.   The support of another, who is sick at some other place, may be very expensive.   If the commitment of Green to the asylum increased the cost of his support, that would no more release the liability of the defendant than would any other circumstance which, without the knowledge of the city authorities, might have the same effect upon his expenses.

Green could not be discharged from the asylum, so as to relieve the defendant from liability to the plaintiff for his support, in any other way than that provided by statute.

Our conclusion, upon the facts stated, is that the defendant is liable for the amount paid by the plaintiff for the support of Green down to 1858.   But, according to the reservation in the case, the defendant may elect to try by jury the legality of Green's discharge from the asylum.

*Case discharged.*