## Moultonborough v. Tuftonborough.

Where a person is found, in any town in this State, poor and unable to support himself, the overseers of the poor of such town are bound to furnish adequate immediate relief.

It is the province of the jury to determine, under suitable instructions of the court, whether such person obtaining aid was, in fact, a pauper, and stood, at the time, in need of relief, and whether the overseers of the poor acted in good faith in advancing supplies, and whether they were judiciously applied.

It is not material that the pauper himself should have made personal application to the overseers of the poor, or either of them. It is sufficient that he was found actually poor, without sufficient property, credit, or friends, for the time being unable to support himself, or supply his immediate wants.

Assumpsit, for the support of a pauper.

One Augustus Sanborn, the alleged pauper, whose settlement was in Tuftonborough, and who had no relations liable to maintain him, being sick at his father's house in Moultonborough, the selectmen of that town, being overseers of the poor, employed a physician and nurse to attend upon him, and sent some supplies to the house.

The plaintiffs contended that Sanborn had the small-pox or varioloid, and was poor and unable to support himself. The defendants contended that he had the measles or rash, and was not poor and unable to support himself.

Sanborn testified that, at the time he was sick, he owned and had in his possession, at his father's house, fifteen dollars in money, and a watch and chain which cost eighty-one dollars; that he owned one hundred and sixty acres of land in Minnesota; that there was due him from a firm in Minnesota and a firm in Maine, between four hundred and five hundred dollars.

There was evidence tending to show that the selectmen of Moultonborough, being also health officers, caused all the inmates of the house to remain there, and made the house a pest-house, under chapter 120 of the Revised Statutes.

It was admitted that the selectmen, in all they did, acted in good faith.

The court instructed the jury that a person might be poor and unable to support himself, within the meaning of the statute, although he might have property, if his means were inaccessible or unavailable, and if he had no credit and no friends, so that he could not, for the time being, suitably supply his wants; that a person was not necessarily a pauper because he was sick and had no property, if he had friends or credit so that he would reasonably be relieved and maintained without aid from the town; and that if Sanborn, under all the circumstances of his situation at the time he was assisted by the plaintiffs, was poor and unable to support himself, it was immaterial whether he had the small-pox or any other disease, and immaterial whether he was in a pest-house or not; that if the plaintiffs incurred expense in relieving or maintaining Sanborn, and if he was poor and unable to support himself, they were entitled to recover, but that the plaintiffs could not recover any expenses incurred for sanitary purposes, under chapter 120, Revised Statutes; that health officers could not make a person a pauper by

imprisoning him in a pest-house, and depriving him of all means of communication with his friends and his resources, but that they should afford him all reasonable means of access to and communication with his friends and his resources, for the purpose of supporting himself; that if Sanborn made no application to the town for assistance, the plaintiffs would not thereby be prevented from recovering, if he was poor and unable to support himself. To these instructions the defendants excepted.

The defendants requested the court to instruct the jury that it was the duty of the overseers of Moultonborough to cause Sanborn to be informed that he was being assisted as a pauper, and that the plaintiffs could not recover if the assistance was rendered without the knowledge or consent of Sanborn that he was receiving assistance as a pauper, or against his wishes, or if he believed that he was receiving assistance under the health laws.

The court declined so to instruct the jury, and the defendants excepted.

The jury returned a verdict for the plaintiffs, which the defendants moved to set aside.

*Emerson*, and *Wheeler & Hall*, for the plaintiffs.

Upon the question as to whether Sanborn was a pauper, the law, as laid down by the court at the trial, is in accordance with the uniform decisions in this State; *Poplin* v. *Hawke*, 8 N. H. 305; *Alton* v. *Gilmanton*, 8 N. H. 306; *Amherst* v. *Hollis*, 9 N. H. 107; *South-Hampton* v. *Hampton-Falls*, 11 N. H. 134; *Litchfield* v. *Londonderry*, 39 N. H. 247; and of Massachusetts, *Sturbridge* v. *Holland*, 11 Pick. 459. Upon this law the jury have found the fact to be that Sanborn was a pauper.

Sanborn being a pauper and in need of relief, it was the duty of the overseers to furnish the needed relief. They would have been liable to indictment if they had neglected their duty in this respect.

There is no law requiring an application. *Lee* v. *Deerfield*, 3 N. H. 290; *Otis* v. *Strafford*, 10 N. H. 352; *Woods* v. *Dennett*, 9 N. H. 55.

It is immaterial whether Sanborn had the small-pox; and upon this point the instructions of the court were full, explicit, and correct. The instructions asked for were properly denied.

*L. D. Sawyer*, for the defendants.

Sanborn was not, in fact or in law, a pauper. The case finds he had the means of supplying his wants, and there was evidence that his father offered to do it, but was not permitted by the selectmen of Moultonborough. He could not, therefore, be treated as a pauper standing in need of relief, under the statute, so as to charge the defendants. *Poplin* v. *Hawke*, 8 N. H. 305; *Jenness* v. *Emerson*, 15 N. H. 486; *Peterborough* v. *Lancaster*, 14 N. H. 382; *Stewart* v. *Sherman*, 4 Conn. 553.

The selectmen of Moultonborough could not go beyond the requisitions of the statute, which must be strictly complied with. *Otis* v. *Strafford*, 10 N. H. 352; *Litchfield* v. *Londonderry*, 39 N. H. 247; *Meredith* v. *Canterbury*, 3 N. H. 8.

An application should have been made for relief, unless, upon an emergency, the circumstances of the case were such that it could not be made. The selectmen of Moultonborough could not, without Sanborn's knowledge or consent, or any application, or, as in this case, against his wishes, and, when there was no immediate necessity, furnish him relief as a pauper, and thus charge the defendants. He and his friends might choose to suffer rather than incur the odium or disabilities of being paupers. It was their right so to do, unless the necessity was so urgent as to render the selectmen liable to a prosecution for neglect of duty. The relief must be rendered as matter of necessity and legal duty, and not of coercion. *Woods* v. *Dennett*, 9 N. H. 55.

The selectmen of Moultonborough evidently acted under the impression that Sanborn had the small-pox; otherwise no relief would have been furnished. If so, the plaintiffs can not recover. *Wilkinson* v. *Albany*, 28 N. H. 9; *Farmington* v. *Jones*, 36 N. H. 271. It is not material whether he had the small-pox or not. If they mistook their duty, although they acted in good faith, the defendants are not liable. They could not, by their acts, declarations, or arrangements, change the liability from the plaintiffs to the defendants. If the supplies were made necessary only by the action of the selectmen of Moultonborough for the public security, for the purpose of preventing the spread of an infectious disease, as this case shows, and not on account of the poverty of Sanborn, or of his inability to support himself, the plaintiffs can not recover. *Farmington* v. *Jones*, 36 N. H. 271; *Jaffrey* v. *Cornish*, 10 N. H. 511; *Peru* v. *Turner*, 1 Fairf. 185; *Thomaston* v. *Warren*, 15 Shepl. 289; *Ludlow* v. *Weathersfield*, 3 Wash. 139.

NESMITH, J. It appears in this case that Augustus Sanborn, the alleged pauper, had his legal settlement in Tuftonborough; that he was sick at his father's residence in Moultonborough, and was furnished by the overseers of the poor of Moultonborough with medical aid, nursing, and some other supplies; and that in what the selectmen did they acted in good faith. Nor does it appear that Sanborn had friends or relatives able or willing to help him.

The first question here is, was Sanborn poor and unable to maintain himself, and was he standing in need of immediate relief, and were the overseers of the poor in Moultonborough justified in furnishing relief as they did?

In *Glidden* v. *Unity*, 30 N. H. 122, the court say the duties of the overseers of the poor, to afford relief to all persons found within their town who are poor and stand in need of relief, are clear. It matters little what may be the duties or obligations of others, whether towns or individuals, by nature, by contract, or by statute. If the person is found poor and standing in need of relief, it is to be furnished to him, and it is to be continued until the need of it ceases. Such is the safe and benevolent general rule pointed out under our statute. *Otis* v. *Strafford*, 10 N. H. 352.

The court in Massachusetts have recently said that selectmen, in their capacity of overseers of the poor, are deemed to act in the

exercise of a sound discretion, both in determining who is a pauper, and as to what is necessary for the relief of such poor person. 6 Gray 417. Still, the acts and doings of overseers are subject to the revision of courts and juries.

It is contended here by the defendants, that the alleged pauper could not be legally such, on account of the amount of property possessed by him when the relief was furnished by the selectmen. The policy of our law has not been such as to deprive a person of all property before he can avail himself of relief. The rule laid down by *Richardson*, C. J., in *Poplin* v. *Hawke*, 8 N. H. 305, appears to us to be just and reasonable: "Was the pauper then in the possession of such credit or property with which he might have relieved himself, without disposing of what must be immediately replaced in order to enable him to live?" "If he had, he was not to be considered a pauper; if he had not, then he was to be considered as entitled to relief under the statute." This question was submitted to the jury in that case. The soundness of the above rule has been acted on and approved in this State. *Litchfield* v. *Londonderry*, 39 N. H. 252; *Alton* v. *Gilmanton*, 8 N. H. 306. So in Massachusetts. *Sturbridge* v. *Holland*, 11 Pick. 459.

It was for the jury to determine, under the proper and reasonable instructions of the court, as given to them in this case, whether the selectmen of Moultonborough used due discretion and diligence on their part in determining whether Sanborn, the alleged pauper, was in need of immediate relief under the circumstances of his peculiar position, and whether the supplies furnished were necessary for him. It is alleged that he was in possession of property. If this property could have been reached, and made available for his benefit, then, of course, it would have been the duty of Sanborn or his friends, and, perhaps, of the selectmen, to have taken it and applied it to meet the present necessities of Sanborn, so far as such property would go. A man may sometimes be so prostrated by sickness, or afflicted with insanity, as to be wholly incapable of giving others either a knowledge of or control of his property. His disease may be one deemed contagious, and so dangerous as to prevent the approach of friends or overseers of the poor to his person; and even the property in his possession may, for the time being, though valuable and convertible at other times, be now considered as infected with disease, and, therefore, unavailable or inaccessible, in a practical or legal sense. Events of this nature sometimes occur, and are beyond the power of human agency at once to control and meet. It was for the pauper making application for relief to surrender his property to the selectmen of Moultonborough; and if it proved unavailable in yielding a credit, or the means of present support, it was then for the selectmen, acting in good faith and in the exercise of a sound discretion, to furnish the requisite aid, under the rule laid down by the court. We see no occasion to lay down any new rule here. The whole question relative to the conduct of the selectmen of Moultonborough, and the situation of Sanborn, and his property, credit, sickness, and wants, were, under the judicious instructions, referred to the jury to settle. If any error exists here,

it must be one of fact, fully within the province of the jury to determine, with which we would not now interfere.

The court in Massachusetts, in *Watson* v. *Cambridge*, 15 Mass. 290, say, that a possession of a claim, and a right to sue it, might not reasonably prevent a person from falling into distress, or deprive one of the benefit of the public charity provided by the statute law for his aid.

Where relief is actually furnished a person in distress, it is presumed to be done at the request of him who had it, and no special request or application need be shown. Frequently he who receives necessary assistance is not conscious of his own wants, and need not know them. *Lee* v. *Deerfield*, 3 N. H. 290.

It was immaterial whether Sanborn was afflicted with the small-pox or some other disease. The instructions of the court tended to protect the defendants from the payment of any charge or expenditure for sanitary purposes, on account of Sanborn having been confined or imprisoned at the pest-house, or from any coercive measures adopted by the overseers of the poor of the plaintiff town, while acting as a health committee. Upon these points the defendants could not have suffered from the instructions of the judge who presided at the trial.

*Judgment on the verdict.*