287 A.2d 353.

ADVISORY OPINION TO HIS EXCELLENCY, FRANK LICHT, *Governor of the State of Rhode Island and Providence Plantations.*

FEBRUARY 14, 1972.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

ADVISORY OPINION to the Governor relative to a method of payment of money to welfare recipients.

February 14, 1972

To His Excellency, Frank Licht

Governor of the State of Rhode Island
and Providence Plantations

We have received your request for our written opinion in

accordance with the provisions of article XII, section 2 of amendments to the constitution of this state upon the following question of law:

"May the State of Rhode Island implement a method of payment of money to welfare recipients, based upon a system of statistical averaging of amounts previously paid for household equipment, furnishings and indebtedness, notwithstanding the provisions of 40-6-9 General Laws of Rhode Island as amended by P. L. 1971, Chapter 21?"

A better perspective of your inquiry and our reply can be had by a brief review of the state's system of welfare payments, certain actions taken by the General Assembly during its January 1971 session and litigation presently pending before the United States Court of Appeals for the First Circuit.

The Rhode Island Department of Social and Rehabilitative Services (hereafter referred to as the Department) is the agency charged with the responsibility of administering the state's welfare program. One of the facets of this program is the furnishing of financial assistance and other services to needy dependent children and the parents or relatives with whom they are living under a plan funded in part by the federal government. This plan is known as Aid to Families with Dependent Children and is usually identified by the initials AFDC.

Prior to March 25, 1971, an AFDC family would receive a regular semimonthly payment which would be based upon their need for such items as food, clothing, personal incidentals, shelter, heat and utilities. The Department also offered a family other grants for "Special Needs." The items in this category included transportation, housekeeping services, personal maintenance during temporary hospitalization, household equipment and furnishings, telephone, indebtedness, moving, special medical supplies and burial. Money was paid for these items only when and if a recipient showed

a need for them in accordance with the criteria set forth by the Department's regulations.

The federal government's contribution to the AFDC program is conditioned upon the state's compliance with the provisions of the Social Security Act of 1935, as amended, 42 U.S.C.A. §602(a)(23) (1969). This section provides that as a prerequisite to a state's continued receipt of federal funds, a state's calculation of a recipient's needs must be based on a standard in effect within the state on July 1, 1969. The United States Supreme Court in *Rosado* v. *Wyman*, 397 U. S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970), ruled that New York's adoption of a flat grant system of AFDC allowances based on the number of individuals per household in place of individual grants for recurring needs supplemented by a special or a flat grant for special needs did not comply with §602(a)(23), since the state had in effect lowered its standard of need by eliminating items that had been included in its July 1, 1969 standard.

Here in Rhode Island on March 25, 1971, the Department's director issued an order which suspended all payments for those items listed in the "Special Needs" category. On April 7, 1971, P. L. 1971, chapter 21, became law. This legislation, which authorized a deficiency appropriation to support certain state operations for the balance of the fiscal year ending June 30, 1971, included an appropriation of $3,471,212 for the AFDC program. The Act also directed that items of household equipment and furnishings and indebtedness be deleted from the Department's standards of assistance and prohibited any further changes in the standards of assistance without legislative approval.

Prior to the enactment of chapter 21, a class action was commenced on April 2, 1971 by the Rhode Island Fair Welfare Rights Organization on behalf of all recipients of AFDC benefits. The action was filed in the United States District Court for the District of Rhode Island. A restraining

order was entered enjoining the Department from suspending any special needs payment. Later, an extended hearing was conducted before Chief Judge Raymond J. Pettine. He found that the General Assembly's deletion of the household equipment and furnishings and indebtedness was incompatible with §602(a)(23). Accordingly, a final judgment was entered which in effect directed the Department, so long as the state continues to participate in the AFDC program, to process and grant special needs payments in compliance with the departmental regulations in effect prior to its March 25, 1971 suspension order. *See Rhode Island F. Welfare Rts. Org.* v. *Department of S. & R. Services,* 329 F. Supp. 860 (1971). The state's appeal from the judgment is presently pending in the Court of Appeals. In its brief the state takes no issue with the findings of facts and conclusions of law made by the District Court. Its sole reason of appeal is the form of the judgment.

Undoubtedly, the proposed system of statistical averages referred to in your communication is the result of the observation made in *Rosado* when the Court emphasized that federal law allows a state to give a payment based on the statistical averaging of the items listed in a July 1, 1969 standard of need if:

    (1)   All factors in the old plan are accounted for; and
    (2)   If all items in the old plan are fairly priced; and
    (3)   If the statistical basis on which the averaging plan is based is fair.

Upon the adoption of an averaging plan, the semimonthly payment would include funds which are to be used to meet a family's special needs. It was pointed out in *Rosado* that such an averaging may benefit some families and adversely affect others.

The final judgment entered in the District Court seems to invite the Department to present any averaging plan it may evolve to the court to see if it complies with §602(a)(23). We, of course, are in no position to pass upon

the legal sufficiency of the proposed plan. Such a determination would involve certain findings of fact. This function is not within our constitutional duty. *Opinion to the Governor,* 101 R. I. 203, 221 A.2d 799 (1966).

As we turn to the consideration of your question, we would point out that, standing alone, it is open to different interpretations. However, when the question posed is placed alongside the information contained in your letter and the language of chapter 21, its scope becomes quite clear.

In our opinion, a reasonable reading of the pertinent provisions of chapter 21 shows that the General Assembly has directed that as of January 1, 1971, any standard of need employed by the Department in determining special needs payments to AFDC recipients shall not include any allowance for household equipment and furnishings or indebtedness.

The dilemma in which Your Excellency finds himself is clear. Article VII, section 2 of the Rhode Island constitution charges you, as Governor, with the solemn obligation to "take care that the laws be faithfully executed." If the Department has an averaging plan that satisfies the mandate of *Rosado,* it is violating the General Assembly's command that the standards of assistance shall not include payments for "household equipment and furnishings" or "indebtedness." Your adherence to the dictates of article VII, section 2 necessitates the loss to this state of substantial federal funds. The Department cannot, so long as chapter 21 remains the law of this state, submit a statistical averaging system which will insure the continued financial support of the federal government. The solution to the problem lies with the General Assembly. If the July 1, 1969 standard is not reinstated, the state may either fully finance what was the AFDC program or reduce the previously available benefits.

In conclusion, we wish to acknowledge the assistance given us by the brief submitted by the amici curiae.

THOMAS H. ROBERTS
THOMAS J. PAOLINO
WILLIAM E. POWERS
ALFRED H. JOSLIN
THOMAS F. KELLEHER

*John J. Donahue, John M. Roney, Cary J. Coen,* Rhode Island Legal Services, Inc., for Rhode Island Fair Welfare Rights Organization, amici curiae.