Merrimack
No. 6843

VIVIAN CLARK & *a.*

v.

N.H. DEPARTMENT OF HEALTH AND WELFARE,
NEW HAMPSHIRE DIVISION OF WELFARE,
AND THOMAS HOOKER, DIRECTOR

DAVID HAMMOND BRADLEY, STATE SENATOR v. SAME

February 20, 1974

*New Hampshire Legal Assistance,* by *George C. Bruno, Bruce E. Friedman, Robert D. Gross* and *C. Bruce E. Viles (Mr. Friedman* orally), for the plaintiffs, Vivian Clark & *a.*

*David Hammond Bradley,* State senator, by brief and orally, pro se.

*Warren B. Rudman,* attorney general, and *John T. Pappas,* attorney *(Mr. Pappas* orally), for the defendants.

DUNCAN, J. The plaintiff Vivian Clark and five other

individual plaintiffs with her who currently receive aid to families with dependent children seek to determine by declaratory judgment pursuant to the Administrative Procedure Act (RSA 541-A:7 (Supp. 1973)) the validity of regulations adopted by the defendant director (RSA 161:4 (Supp. 1973)) effective on or about February 15, 1974. They also seek injunctive relief against implementation of the regulations. The regulations (Sections 2700-2715 of the Public Assistance Manual of the Department) purport to establish a "flat grant" system of assistance payments to recipients of "Aid to Families with Dependent Children" (AFDC), as opposed to grants paid under prior regulations. These plaintiffs allege that the AFDC payments received by them will be reduced under the proposed flat grant system, and that the regulations establishing that system are in violation of RSA 167:7, and will result in payments which violate part II, article 56 of the New Hampshire constitution, prohibiting disbursements from the State treasury except "agreeably to the acts and resolves of the general court". N.H. Const. pt. II, art. 56.

The plaintiff Bradley, in his capacity as State senator, likewise alleges that the proposed regulations violate RSA 167:7, and that their implementation will violate part II, article 56 of the constitution, and further that they will violate part I, article 37, of the New Hampshire constitution by preventing him from "exercising his constitutional and lawful right and duty" to participate in the legislative process.

In advance of further proceedings, the Superior Court (*Keller,* C.J.) reserved and transferred upon an agreed statement of facts, the question of whether the proposed "flat grant" system is illegal by virtue of "that part of RSA 167:7 which provides as follows: 'In any case due regard shall be given to the resources, necessary expenditures in each case, the conditions existing in each case, and the rules and regulations made by the division . . . .'".

The new regulations have been adopted in an effort to comply with regulations of the federal government designed to require reduction of the level of overpayments of

aid, as well as of payments to ineligible persons, under penalty of loss of federal aid to the States. 45 C.F.R. 205. 40, 205.41 (1973). In the case of New Hampshire, this requires that the percentage rate of erroneous payments be reduced by July 1, 1975, to 5 percent in the area of overpayments and 3 percent in the area of payments to ineligible families, the reduction to be accomplished in three six-month periods, each period involving one-third of the total excess rate.

It appears from the agreed statement of facts, that under the prior regulations, payments to AFDC recipients were made to cover minimum basic needs, including food, clothing, shelter, laundry, fuel, telephone and other utilities, where not otherwise obtainable, at figures based upon averages derived from Bureau of Labor Statistics Standards for a low income level of living for the northeast region. In addition, the regulations provided for "special circumstance allowances" arising out of recurring and nonrecurring expense items such as life and health insurance, housekeeping service, expense of personal and child care, transportation and moving expense, cost of property repairs, employment training, and utility installations and deposits. Provision was made for payments on account of greater than normal shelter expense, and for the denial of payments for shelter expense to the extent that such expense was not incurred by the recipient.

Under the new regulations establishing the flat grant system, a fixed dollar amount according to family size will be allowed, to include the basic needs covered under the former regulations but exclusive of cost of housekeeping, personal and child care services, health insurance, expenses relating to employment and training, and debts incurred prior to receipt of assistance. Allowable amounts for basic needs continue to be based upon Bureau of Labor Statistics Standards for a low income level of living in the northeast region for the year 1969, but updated by the statistical average for recipients according to family size for the year ending February 28, 1973. In addition, provision will be made for child day care services upon a limit-

ed basis, and for employment and training program expenses of limited duration and amount. Expenses of replacement of furniture or household equipment will be allowed only where occasioned by catastrophe, and rental expense which exceeds the basic standard will not be allowed, except where the result of extreme emergency.

As was the case under the former regulations, allowances will be determined only after deduction of the recipient's income from other sources, and basic needs including fuel and utilities are to be determined by reference to average expenses (standardized allowances) rather than the expenditures of the individual recipients.

Thus a comparison of the two systems indicates that while they have certain similarities in fixing allowances for basic needs, the flat grant system will provide less flexibility in meeting individual needs of recipients which are not common to most, and in meeting such expenses as rental costs which vary from the norm by reason of localized conditions. Additionally it appears that of 6,427 AFDC cases as of November 1973, 46 percent will receive increased allowances, and 53 percent decreased allowances. The practical results, as alleged by the plaintiff recipients, will be reductions in their current allowances by amounts ranging between nineteen and sixty-five dollars per month, for families in the two, three and four member categories.

Despite the complexities of the factual background of the petitions, the single issue of law presented by this transfer is whether the proposed regulations establishing a "flat grant" system so far depart from the requirements of RSA 167:7 as to be invalid. The plaintiffs' principal argument is that establishment of the proposed "flat grant" system exceeds the director's authority. We need not consider the merits of the technique chosen by the director to satisfy the federal mandate that the level of erroneous payments under the AFDC program be reduced. *See* 45 C.F.R. 205.40, 205.41 (1973). We decide only the question of whether the director may, consistently with state law, implement this "flat grant" plan.

The method for determination of the amount to be paid

each eligible AFDC family in this jurisdiction is provided in RSA 167:7: "Amount of Assistance. The director of the division of welfare, department of health and welfare, shall determine the amount of assistance which any person shall receive under this chapter or RSA 161. The director of the division of welfare shall, however, in appropriate cases, first consult with the proper officials of counties or towns hereby required to contribute to the cost thereof. *In any case* due regard *shall* be given to the resources, necessary expenditures *in each case,* the conditions existing *in each case,* and the rules and regulations made by the division, and said assistance shall be sufficient, when added to all other income and resources of *the case,* to provide such person with a reasonable subsistence compatible with decency and health." (Emphasis added.) *See also* Laws 1937, 202:13.

The legislative intent is unambiguous: the words "in any case" and "in each case" demand case-by-case determination of the level of assistance necessary to provide reasonable subsistence compatible with decency and health. *See Vialpando v. Shea,* 475 F.2d 731, 733 (10th Cir. 1973). The word "shall" indicates that such considerations are mandatory. *North Hampton &c. Ass'n v. Commission,* 94 N.H. 156, 158, 48 A.2d 472, 474 (1946); RSA 21:2; *see Villa v. Arrizabalaga,* 86 Nev. 137, 466 P.2d 663 (1970). They are not altered by the fact that RSA 167:10 authorizes the director to determine whether an applicant is eligible for assistance, and in what amount.

This view of the legislative intent is confirmed by action taken by the 1973 legislature. RSA 167:11-a (Supp. 1973) as inserted by Laws 1973, 532:33 made misuse of "special circumstance" grants by recipients a misdemeanor. The flat grant program would virtually eliminate "special circumstance" grants. Again, House bill 878, approved by both houses but pocket-vetoed by the Governor, provided for procedures and an additional appropriation for investigation and periodic redetermination of eligibility for AFDC payments as well as enforcement of support orders and registration of applicants for work or training. A

reasonable conclusion from this action is that the legislature considered the problem of unjustified payments, and sought to remedy the problem by providing additional funds to better police existing regulations, rather than by institution of an entirely new system. *See also* Laws 1973, 376:75.

In support of the new regulations, the director relies upon broad statements of his statutory duties and powers found in RSA 161:2 I, III (Supp. 1973), VI and VIII, and RSA 161:4 (Supp. 1973). Such discretion as may be vested in him under these provisions, however, must be governed by essential standards which establish limitations upon his delegated authority. *Conway v. Water Resources Board,* 89 N.H. 346, 199 A. 83 (1938). The limitations appearing in RSA 167:7 plainly relate to the cases before us. The director rightly points out that some measure of discretion is conferred by this section, which requires that "due regard shall be given" to the considerations there stated. However, for example: allowances which include a segment based upon the average cost of rentals when the particular recipient has no such cost, or which deny an allowance for actual rental cost in excess of the average, cannot reasonably be held to reflect the "due regard", or appropriate respect, required by the statute for the actualities of "each case", whether enuring to the benefit of the recipient or of the State.

In summary, the director is without authority to promulgate regulations which conflict with statutory requirements. *California League of Senior Citizens, Inc. v. Brian,* 35 Cal. App. 3d 443, 110 Cal. Rptr. 809 (1973); *California Welfare Rights Org. v. Carleson,* 4 Cal. 3d 445, 482 P.2d 670, 93 Cal. Rptr. 758 (1971); *Bureau of Old Age Assistance v. Commissioner of Pub. Welfare,* 326 Mass. 121, 93 N.E.2d 267 (1950); *see Opinion to the Governor,* 109 R.I. 474, 287 A.2d 353 (1972). Thus, insofar as the new regulations establish a system which determines the level of assistance to AFDC families by a method which disregards particular needs varying materially from the average, they are void because contrary to the requirements of RSA 167:7. Those

requirements are subject to change or modification by the legislature, but may not be altered by administrative action.

*Remanded.*

GRIMES, J., did not sit; the others concurred.