Hillsborough
No. 7150

PATRICIA L. RAU *& a.*

v.

NEW HAMPSHIRE DIVISION OF WELFARE *& a.*

March 31, 1975

*New Hampshire Legal Assistance* and *H. Neil Berkson, Bruce E. Fried-man* and *Barbara Sard (Mr. Berkson* orally) for the plaintiffs.

*Warren B. Rudman,* attorney general, and *Charles G. Cleaveland,* assistant attorney general *(Mr. Cleaveland* orally), for the State.

*Cleveland, Waters & Bass* and *Robert T. Clark (Mr. Clark* orally) for the State Employees Association of New Hampshire, Inc., as intervenors.

PER CURIAM. The issue in this case is whether the superior court has jurisdiction to hear and consider a petition to enjoin the division of welfare and its director from temporarily reassigning sixty-two social workers to nonsocial work duties. We hold that it does.

At the hearing on preliminary relief, the Superior Court *(King, J.)*, not being satisfied it had jurisdiction to hear the cause, transferred the question of jurisdiction without ruling.

The basic facts are these. By a memorandum issued January 29, 1975, effective February 4, 1975, defendant Thomas L. Hooker, director of the division of welfare, implemented "Project Update": an administrative assignment of sixty-two of this State's social service staff to duties involving reinvestigation of Aid to Families of Dependent Children (AFDC) recipients and recalculations of AFDC grants. 42 U.S.C.A. § 601 *et seq.* (1974). Reassignment of approximately one-half of the social work staff is expected to continue until at least July 1, 1975. The purpose of this "temporary" reassignment is to attempt to lower both the percentage of overpayments and the number of ineligible recipients in the AFDC program. Without reduction in these error rates, the State claims a possible loss of federal welfare funds.

Plaintiffs, as welfare recipients, on behalf of themselves and all others similarly situated, claim that the reassignment violates the defendants' obligations under the state and federal welfare law to provide certain minimum family assistance services. RSA 161:2 I, II-III (Supp. 1973), IV, VIII; 161:4, :7 (Supp. 1973); 169:10 (Supp. 1973); 169:37 *et seq.* (Supp. 1973) and federal requirements

set forth pursuant to 42 U.S.C.A. §§ 602 (a) (14), (16), (20) (1974) as amplified by 45 C.F.R. §§ 220.40 (b) (3), (4) (October 1, 1974). They further allege that they have no adequate remedy at law and will suffer irreparable harm unless an injunction or other relief is granted.

Both sides agree, however, that the reassigned social work staff rendered vital protective family services encompassing, in part, child-care, licensing of foster and day-care homes and centers, supervising child placement, adoption, employment and training services and independent care services to adults. According to the agreed statement of facts, the "[d]efendants admit that there will be a lessening of social services provided during the course of 'Project Update', but deny that the curtailment will amount to a total deprivation of any specific type of service, or that any particular recipient will be foreclosed from all services, and believe that in any event, the reassignment is administratively justified." The impact and legality of the administrative reassignment, therefore, is an open question.

Authority to hear these issues properly resides within our superior courts. As courts of general jurisdiction, they "shall take cognizance . . . of suits in equity . . . ." (RSA 491:7 (Supp. 1973)) when "there is not a plain, adequate and complete remedy at law . . . ." RSA 498:1 (Supp. 1973); RSA 498:2; *Hatch v. Hillsgrove,* 83 N.H. 91, 92-93, 138 A. 428, 430 (1927). Within this plenary jurisdiction, suits against State agencies or their officials allegedly acting beyond their legislative or constitutional authority may be entertained. *O'Neil v. Thomson,* 114 N.H. 155, 158-59, 316 A.2d 168, 170 (1974); *Shirley v. Water Pollution Commission,* 100 N.H. 294, 296-97, 124 A.2d 189, 191 (1956).

Plaintiffs' pleadings in this case reveal adequate jurisdictional facts. They allege that certain basic social services will be reduced, if not terminated, by the State welfare directive in question. Such actions, they charge, specifically violate their enumerated state and federal statutory rights to certain benefits for which there is no adequate remedy at law and from which irreparable harm results. *See Cornelius v. Minter,* Civil No. 73-4261-F (D. Mass., decided October 21, 1974).

While we do not pass upon the merits of this case, we are aware that the division of welfare appears to be in an administrative dilemma. That is, the division must serve with the same staff two legislative masters, one being the need to maintain statutorily pre-

scribed social services and the other to maintain their fiscal integrity in order to receive federal welfare funds. The director has discretion to assign personnel and prescribe their duties. RSA 161:4, :7 (Supp. 1973). This case is distinguishable from *Clark v. N.H. Dep't of Health and Welfare,* 114 N.H. 99, 315 A.2d 187 (1974), which held, in part, that State executive officers cannot annul, amend, or modify a legislative program enactment.

*Remanded.*

Request of House of Representatives
No. 7151

OPINION OF THE JUSTICES

March 31, 1975

The following resolution was adopted by the house of representatives on March 5, 1975, and filed with the supreme court on March 6, 1975:

"Whereas there is pending in the House of Representatives House Bill No. 36, 'An Act relative to the length of time in which the governor and council must approve a commissioner of health and welfare'; and

"Whereas doubt has been expressed as to the constitutionality of certain provisions of said bill;

"Now, therefore, Be It Resolved by the House of Representatives;

"That the Justices of the Supreme Court be respectfully requested to give their opinion upon the following important questions of law:

"1. Would any provision of the Constitution be violated by the provision in said bill establishing a sixty day time limit within which the governor and council must make an appointment to the office of Commissioner of Health and Welfare from the list of nominees furnished by the Advisory Commission?

"2. Would any provision of the Constitution be violated by the provision in said bill empowering the Advisory Commission to make an appointment to the office of Commissioner of Health and Welfare in the event that the governor and council shall fail to make an appointment within such sixty day period?

"Further resolved that the clerk of the house be instructed to transmit to the clerk of the Supreme Court six copies of this resolution and six copies of House Bill No. 36."

The following answers were returned:

*To the House of Representatives:*

The undersigned justices of the supreme court submit the following reply to the inquiries contained in your resolution adopted March 5, 1975, and filed with this court March 6, 1975.

Your questions relate to House bill 36 which authorizes the Governor and Council to appoint a commissioner of health and welfare from a list of nominees submitted by the advisory commission on health and welfare within a period of sixty days after such nominees are submitted. Upon a failure of the Governor and Council to make an appointment within the sixty days, the advisory commission is then authorized to appoint a commissioner of health and welfare within the next sixty days.

Question No. 1 asks whether any provision of the constitution would be violated by limiting the power of the Governor and Council to appoint to sixty days after the submission of nominees.

Question No. 2 asks whether any provisions of the constitution

would be violated by transferring the power of appointment to the advisory commission for sixty days upon failure of the Governor and Council to appoint within the first sixty-day period.

The constitution provides for certain constitutional State officers and directs the manner in which they are to be appointed or elected. Thus the secretary of state and the State treasurer are chosen by joint ballot of the senate and house of representatives. N.H. CONST. pt. II, art. 67. Judges, the attorney general, coroners and military officers are appointed by the Governor and Council. N.H. CONST. pt. II, art. 46. The method of selection of constitutional officers is provided by the constitution and may not be altered by the legislature.

All other officers occupy positions established by the legislature and the method of their election or appointment is determined by the legislature. The constitution authorizes the legislature "to name and settle biennially, or provide by fixed laws for the naming and settling, all civil officers within this state." N.H. CONST. pt. II, art. 5. Since the legislature has the power to name a commissioner of health and welfare, it has the power to delegate the appointing power to either the Governor and Council or the advisory commission or both. *Opinion of the Justices,* 102 N.H. 195, 197, 152 A.2d 878, 880 (1959).

In previous answers to questions arising from the impasse between the Governor and Council and the advisory commission in the appointment of a commissioner of health and welfare under the present law (RSA 126-A:4 (Supp. 1973)), we have stated that the legislature may properly prescribe how and by whom the appointment shall be made. *Opinion of the Justices,* 113 N.H. 675, 312 A.2d 702 (1973); N.H. CONST. pt. II, art. 41; *Opinion of the Justices,* 114 N.H. 165, 316 A.2d 174 (1974); *Brouillard v. Governor,* 114 N.H. 541, 323 A.2d 901 (1974).

The legislative power to determine the limitations upon the delegation of the power of appointment is not restricted to the present statutory provisions that the Governor and Council appoint from the nominees of the advisory commission. RSA 126-A:4 (Supp. 1973). House bill 36, placing a time limit on the power of the Governor and Council to appoint a commissioner and transferring the power of appointment to the advisory commission upon expiration of that time limit, is within the legislative authority. *See Opinion of the Justices,* 90 N.H. 568, 8 A.2d 597 (1939).

Reliance is placed on part II, article 47 of the constitution for holding the present proposed legislation unconstitutional. Article

Governor Meldrim Thomson, Jr., by his legal counsel, James J. Barry, Jr., filed a memorandum of law for affirmative answers to questions 1 and 2.

Miriam O. Page, by her attorneys, McLane, Graf, Greene, Raulerson & Middleton and Charles A. DeGrandpre and Richard S. Snierson, filed a memorandum of law in favor of negative answers to questions 1 and 2.