Hillsborough
No. 7165

JAMES HARKEEM

v.

NEW HAMPSHIRE DEPARTMENT OF EMPLOYMENT SECURITY,
BENJAMIN C. ADAMS, COMMISSIONER, AND
MILLER SHOE-DOVER, MELVILLE SHOE CORP.

November 28, 1975

*Wadleigh, Starr, Peters, Dunn & Kohls* and *James C. Wheat (Mr. Wheat* orally) for the plaintiff.

*Edward F. Smith, Andre J. Barbeau,* and *Michael M. Black (Mr. Barbeau* orally) for the New Hampshire Department of Employment Security.

KENISON, C.J. This case involves the validity of a regulation of the department of employment security under which the plaintiff was denied unemployment compensation benefits by reason of his voluntary retirement. The plaintiff, then age sixty-eight, voluntarily retired from his employment at Encore Shoe Corporation in Manchester on March 23, 1973. He filed for unemployment compensation which was

denied in May 1973 because he had voluntarily retired. Early in August 1973, Mr. Harkeem was hired by Miller Shoe-Dover to replace a lasting room foreman who was hospitalized. In mid-September this employment was terminated and the plaintiff sought unemployment compensation. He filed claims for twenty-four consecutive weeks until he obtained new employment in March 1974. In October 1973, the certifying officer and the appeal tribunal denied the claim, in accordance with RSA 282:4 K and the implementing Regulation 32. The plaintiff appealed to the Superior Court (*Loughlin,* J.) which reserved and transferred the following question of law: "Is the claimant, James Harkeem, disqualified from the receipt of benefits under the provisions of RSA 282 for the period September 14, 1973 through March 4, 1974?" The superior court found that Harkeem was eligible for unemployment compensation unless barred by RSA 282:4 K and Regulation 32.

RSA 282:4 K provides: "An individual shall be disqualified for benefits ... [f]or any week in or subsequent to which an individual becomes unemployed due to retirement or superannuation except in accordance with the regulations of the commissioner." This regulation distinguishes between voluntary and involuntary retirement. The plaintiff retired voluntarily. A person who retires involuntarily is immediately eligible for benefits.

To understand the effect of the regulation on the plaintiff it is necessary to outline the administrative framework established by the statute. The unemployment compensation system is administered on the basis of an April 1-March 31 benefit year. To be eligible in a given benefit year a claimant must have earned minimum "annual earnings" in the preceding calendar year. RSA 282:2 B, 1 C, 1 O (2), and 1 A (Supp. 1973). Regulation 32 A (2) establishes the conditions for entitlement to benefits following voluntary retirement. It provides: "Annual earnings earned subsequent to retirement may be used in the applicable benefit year ...." The commissioner interprets this regulation, which is apparently unique, to prohibit the payment of benefits on the basis of annual earnings prior to retirement. Thus a person who retired on December 31, 1974, and began work at a different job the next day cannot possibly receive unemployment compensation before April 1, 1976, the beginning of the first benefit

year for which he can qualify. In the present case, the plaintiff's 1972 annual earnings were cancelled by his March 1973 retirement, so that he was disqualified not only at retirement but also when he became unemployed after resuming work.

There are a number of common situations where an employee has left work under circumstances that disqualify him for unemployment compensation, has thereafter returned to work, and later has again become unemployed. In such cases there is a question whether the second condition of unemployment is due to the earlier disqualifying cause. For example, a person who leaves work "voluntarily without good cause" is disqualified for benefits, but the disqualification is removed when the person earns "in each of three weeks wages in employment . . . ." RSA 282:4 A (Supp. 1973). Similarly, a person is disqualified for benefits whose "unemployment is due to a stoppage of work which exists because of a labor dispute . . . ." RSA 282:4 F (Supp. 1973). However such a person is eligible for benefits, and the disqualification is removed, when he "has . . . worked in five or more consecutive weeks in employment for an employer, . . . and then becomes unemployed from said employer due to a lack of work." RSA 282:4 F (5) (Supp. 1973). *See also* RSA 282:4 C, L, and M (Supp. 1973). Together these provisions form a pattern and indicate a policy. In neither of these situations does the person who left work in circumstances which disqualify him suffer a forfeiture of his wage credits. In both cases he may remove the disqualification by returning to work for five weeks. Under Regulation 32 A (2) a voluntary retiree forfeits his wage credits and remains disqualified for a period of at least six months and potentially as long as eighteen months.

The economic situation of a voluntary retiree who returns to work may be no different from that of a person who leaves work voluntarily or who becomes unemployed as a result of a labor dispute. The retiree may be as much in need of and as actively seeking work as the others. *Cf.* Crum, *"Constructive Voluntary Quit" Disqualification – A Study in Employment Security,* 44 N.D.L. Rev. 309, 312-25 (1968). For example, a worker may retire not from a desire for leisure but to seek work more fitting his advancing age. Or a retiree may return to work because of a change in his economic circumstances.

The underlying purpose of the unemployment compensation statute is "to insure in limited measure against unemployment of individuals regularly attached to the labor market which is not occasioned with their consent or by their fault." *Wellman v. Riley,* 95 N.H. 507, 510, 67 A.2d 428, 429 (1949). Regulation 32 A (2) sets standards for establishing regular attachment to the labor market and the absence of consent or fault which are much more stringent than those established by the legislature for similar situations. The regulation is in conflict with the statutory pattern and policy and, therefore, is invalid. *Clark v. N.H. Dep't of Health and Welfare,* 114 N.H. 99, 315 A.2d 187 (1974); *cf. Fernald v. Bassett,* 107 N.H. 282, 220 A.2d 739 (1966) (zoning ordinance held not authorized by the enabling act). *See also* 26 U.S.C.A. § 3304 (a) (10) (Supp. 1975); Crum, *The New Federal Unemployment Insurance Legislation,* 55 Mass. L. Q. 207, 218-19 (1970).

The statute commits to the experienced discretion of the commissioner the determination of the circumstances under which the disqualification of RSA 282:4 K is removed. This discretion must be exercised in a manner consistent with the federal statute, with kindred provisions of the New Hampshire statute and with the fundamental purpose of unemployment insurance. This regulation does not meet these criteria. Therefore the transferred question is answered in the negative.

*Remanded.*

All concurred.