Hillsborough
No. 78-054

ARMAND A. ARCHAMBAULT

v.

BENJAMIN C. ADAMS, COMMISSIONER, & a.

September 27, 1978

*Wiggin & Nourie*, of Manchester (*Jon Groetzinger, Jr.*, orally), for the plaintiff.

*Edward F. Smith, Robert L. Hermann, Jr.*, and *Andre J. Barbeau* (*Mr. Hermann* orally), for the Commission.

LAMPRON, C.J.   This is an unemployment compensation appeal pursuant to RSA 282:5. The plaintiff was employed by the United States Postal Service or its predecessor from 1946 until he retired on February 5, 1973. The Postal Service classified his reason for leaving as "Retirement-Disability." The plaintiff has claimed throughout this case that his disability, i.e., a heart ailment, is job-related. He has received fifty percent of his base pay during his retirement. Shortly after the plaintiff retired, he visited the Manchester office of the department of employment security. There was an issue at the trial below of whether the plaintiff actually applied for unemployment compensation during his visit to the office. The lower court found that the plaintiff was excused from complying with the statutory filing requirements, and the court treated the case as if the plaintiff had filed. There has been no appeal from this ruling of the lower court, so we will assume that the plaintiff filed for unemployment compensation benefits on February 20, 1973, and that the benefits were denied.

The plaintiff then waited over a full year before filing again for benefits on June 3, 1974, and every week thereafter. He was denied benefits because both the certifying officer and the appeal tribunal of the department of employment security determined that he was

disqualified for two reasons: (1) his retirement from the Postal Service was voluntary, D.E.S. Regulation 32 and RSA 282:4 K; and (2) he did not have annual earnings in two calendar quarters in 1973 as required by RSA 282:2 B(1). The plaintiff thereafter appealed to the Superior Court (*Dunfey*, J.), which affirmed the disqualification, and reserved and transferred all questions of law raised by plaintiff's exceptions. For the reasons hereinafter stated, we affirm the lower court's rulings and dismiss the appeal.

The time period for which the plaintiff originally filed a claim for unemployment benefits is lengthy, and the manner in which the benefit year runs complicates the analysis. To understand the exact time periods and issues involved in this case, it is necessary to briefly explain the operation of the "benefit years" and the regulations involved. Reference is also made to *Harkeem v. New Hampshire Department of Employment Security*, 115 N.H. 658, 659, 348 A.2d 711, 712 (1975), where a similar explanation is given. The benefit year for unemployment compensation runs from April 1 to March 31. RSA 282:1 C. A claimant's eligibility during a benefit year is determined by his annual earnings, as defined in RSA 282:1 O(2) (currently at RSA 282:1 O (Supp. 1977)), in the preceding calendar year. At the time of the events in this case, a claimant must have earned not less than $100 in each of two calendar quarters of the preceding calendar year, and must have earned a minimum of $600 in the preceding calendar year. RSA 282:2 B(1). *See* RSA 282:2 B(1) (Supp. 1977) for the current requirements of $300 in two quarters and a minimum of $1,200.

A claimant is disqualified from receiving benefits "[f]or any week in or subsequent to which an individual becomes unemployed due to retirement or superannuation except in accordance with the regulations of the commissioner." RSA 282:4 K. Regulation 32 prescribes the test for determining when retirement will disqualify a claimant from benefits. Regulation 32 A(1) states: "An individual who but for his own act, condition or election at the time of retirement could have continued in the employ of the employer shall be deemed to have voluntarily retired" is disqualified from receiving benefits unless the disqualification is removed under the doctrine espoused in *Harkeem v. New Hampshire Department of Employment Security supra.* Regulation 32 B(1) states: "An individual shall be deemed to have involuntarily retired if at the time of retirement he was prohibited by the employer, due to (i) a negotiated contract, (ii) a company policy, (iii) or otherwise, from continuing in the employ of the

employer by reason of his age." An individual who involuntarily retires is entitled to benefits under Regulation 32 B(2) for the twenty-seven weeks following the retirement, after which his entitlement is determined in accordance with Regulation 32 A(2). This regulation provides as follows: "Annual earnings earned subsequent to retirement may be used in the applicable benefit year, if as to all other provisions of the law, the individual is eligible and not disqualified."

The overall time period involved in the plaintiff's claim can be divided as follows:

1.  February 5, 1973—March 31, 1973: This is the period from when the plaintiff retired until the beginning of the next benefit year. The period includes the first eight weeks of the twenty-seven-week entitlement period under Regulation 32 B(2).

2.  April 1, 1973—March 31, 1974: This is the 1973 benefit year, and includes the last nineteen weeks of the twenty-seven-week entitlement period under Regulation 32 B(2).

3.  April 1, 1974—March 31, 1975: This is the 1974 benefit year.

The plaintiff did not claim at the trial below that he was entitled to any benefits for the first time period. Also, at the oral argument the plaintiff waived any claim to the third time period and all of the second time period except that portion which is part of the twenty-seven-week entitlement period. This therefore reduces the plaintiff's claim to a period of nineteen weeks of benefits beginning on April 1, 1973.

■ The plaintiff's first contention is that the trial court erred in ruling that he voluntarily retired, because all parties agreed that the retirement was involuntary and no evidence was presented to support a finding of voluntary retirement. In support of his argument, the plaintiff points to various statements in the trial transcript made by the defendant's counsel. These statements, taken out of context, could be interpreted as concessions by the defendant's counsel that the plaintiff did indeed retire involuntarily. However, the record must be viewed in its entirety, and we do not believe that such a view supports the plaintiff's argument. First, the defendant's answer to the plaintiff's petition made the plaintiff's retirement an issue at the trial. Second, there are statements in the transcript which show that the defendant's counsel assumed that the type of retirement was an issue in the case. For example, at one point in the trial the defendant's counsel stated to the court, "The entire question of whether he

is a voluntary or involuntary retiree is before the court on this appeal proceeding." Third, the court devoted a considerable portion of its opinion to the retirement issue. We do not believe that the trial court would have addressed this question if, as the plaintiff contends, it was obviously not an issue in the case. We must admit that it is sometimes hard to reconstruct the events at a trial from the cold face of a transcript, but all of the indications from the record show that the defendant did not concede that the plaintiff involuntarily retired.

We also do not agree that there is no evidence to support the trial court's findings. The plaintiff apparently is not questioning the court's interpretation of Regulation 32, but is claiming only that no evidence was introduced by either party that could form a basis for a ruling of voluntary retirement. To the contrary, there is evidence to support a finding that the plaintiff's retirement did not come about as a result of his age, as required by the regulation, but instead was a result of an election made by the plaintiff because of his physical condition. The trial court had before it the certified record from the appeal tribunal of the defendant department. This record was evidence which could properly be considered by the court. RSA 282:5 G(3). The record contains statements by the plaintiff that he had applied for the retirement, and it could be found that he elected to retire. In this jurisdiction the findings of the trial court will not be set aside if they could reasonably be made on the evidence. *Wheeler v. State*, 115 N.H. 347, 350, 341 A.2d 777, 780 (1975). We hold that the trial court's findings are supported by the evidence.

The plaintiff's second argument is that, even assuming a voluntary departure, he left with good cause attributable to his employer. The plaintiff contends that when an employee retires because of a job-related disability, this constitutes termination for good cause attributable to the employer and the employee should be allowed to recover unemployment benefits. The plaintiff bases his argument on Regulation 21, entitled "Voluntary Quit Without Good Cause," which provides in part:

> An individual shall be considered to have left his work voluntarily without good cause if of his own choice or volition he terminates the employee-employer relationship for a reason which is not attributable to the employer.

This regulation and RSA 282:4 A(1) therefore provide that if an employee quits with good cause he is still entitled to benefits.

The plaintiff is attempting to create a hybrid regulation by crossing Regulations 21 and 32. The two regulations must, however

be considered separately in their operation. Regulation 21 deals with a voluntary *quit*, whereas Regulation 32 deals with *retirement.* The plaintiff retired from the Postal Service and is receiving fifty percent of his salary; he did not quit. Regulation 21 is not therefore applicable, and there is no need to determine whether the plaintiff's retirement was with good cause because it is irrelevant to the operation of Regulation 32 and RSA 282:4 K.

Plaintiff's final argument is that his disqualification because of voluntary retirement was lifted by a subsequent return to work per *Harkeem v. New Hampshire Department of Employment Security supra.* The subsequent employment that the plaintiff refers to is his election to the State legislature to serve in a Special Session that was to start in January 1974, for which he was paid $200 in October 1973.

The plaintiff is not arguing that the income he received from his term as a legislator should be used as a basis for future benefits, but only that his legislative work should be sufficient to lift the disqualification of the voluntary retirement. The plaintiff believes that *Harkeem* somehow supports his argument. We are of the opinion, however, that *Harkeem* does not apply to this case, because the plaintiff's employment subsequent to his retirement is excluded from the definition of employment under RSA 282:1 H(4)(q). *See also* RSA 98:2(a). In *Harkeem* the subsequent employment was not excluded from the definition of employment. We do not see any validity in the plaintiff's argument that *any* subsequent work should lift the disqualification of a voluntary retirement. To hold as the plaintiff requests would be to circumscribe the legislative scheme of providing benefits only to those individuals who have not voluntarily elected to be unemployed.

*Appeal dismissed.*

BROCK, J., did not sit; the others concurred.