Hillsborough
No. 81-433

MARIE HALL *& a.*

v.

COUNTY OF HILLSBOROUGH *& a.*

May 17, 1982

*New Hampshire Legal Assistance*, of Manchester (*Elliott Berry* and *Mitchell M. Simon* on the brief, and *Mr. Simon* orally), for the plaintiff.

*David Horan*, of Manchester, by brief and orally, for the defendants.

BROCK, J. The plaintiffs, Marie Hall and Albert Couture, initiated this case after requesting financial assistance from the defendant, Hillsborough County, for the payment of medically necessary nursing home care. RSA 166:10 (Supp. 1981). The plaintiff, Marie Hall, has since deceased and her case is moot.

Albert Couture is an elderly man who was placed at the Briston Manor Nursing Home in Bedford in November 1980, after he became completely disabled as the result of a stroke. A recently conducted medical examination of the plaintiff established his need for the type and quantity of care which is generally provided only in a nursing home. His present monthly income is $726; $514 from Social Security retirement benefits and $212 from two private retirement pensions. At the time of the trial, the cost of nursing home care in southern New Hampshire was approximately $1,200 per month.

In order for a nursing home patient to receive assistance from the State Medicaid program, the patient must have a monthly

income of not more than $714. Prior to August 31, 1981, the plaintiff had a monthly income of less than $714 and the Medicaid program paid for the difference between his income and the cost of nursing home care at Briston Manor. As a result of the cost-of-living adjustment to his social security payments, however, his monthly income increased to $726, and he became ineligible for Medicaid assistance.

Because he had no other means to pay the monthly charge of $1,257.56 at Briston Manor, or the cost of care in any nursing home in southern New Hampshire, he requested assistance from the defendant county in the late summer of 1981. During that same summer, however, the defendant had promulgated a regulation, effective August 12, 1981, which established an income limitation of $714 per month for eligibility for nursing home care assistance. This income limitation was identical to that imposed for eligibility for State Medicaid benefits. Based on this regulation, because of a monthly increase of $12.00 in income, the defendant denied the plaintiff's application for assistance.

The plaintiff filed this action in superior court, alleging that the regulation breached the defendant's duty under RSA chs. 165 and 166 to relieve and maintain persons who are poor and unable to support themselves. The plaintiff also alleged that the regulation violated the plaintiff's rights to equal protection and due process of law under the fourteenth amendment to the United States Constitution. Following a hearing on cross-motions for summary judgment, RSA 491:8-a (Supp. 1981), the Superior Court (*Contas*, J.) ruled that the defendant's regulation violated the statutory mandate of chapters 165 and 166, and enjoined the use of the regulation by the defendant. The defendants then appealed to this court.

The defendant alleges that the county has a legal obligation to promulgate specific written standards of eligibility implementing its general assistance program because it was so ordered by the federal court in *Baker-Chaput v. Cammett*, 406 F. Supp. 1134, 1140 (D.N.H. 1976). It also argues that the State Medicaid program limits the county's obligation to provide medical assistance to Medicaid recipients only. It contends that the State Medicaid statute, RSA 167:18-b, which requires the county to reimburse the State for part of the cost of care for Medicaid recipients who are in nursing homes, specifies the full extent of the counties' liability for nursing home care. Finally, the defendant argues that the defendant county should not be required to provide assistance in excess of the State's cut-off for Medicaid benefits. We disagree with these arguments and find no error in the trial court's decision.

The general assistance statutes, RSA chs. 165 and 166, state in pertinent part:

> "Whenever a person in any town shall be poor and unable to support himself he shall be relieved and maintained by the overseers of public welfare of such town, whether he has settlement there or not."

RSA 165:1 (Supp. 1981). Responsibility to relieve and maintain needy people such as the plaintiff who have no settlement within a town rests with the counties under RSA 166:1, :10 (Supp. 1981). The statute does not provide standards for the determination of who is poor and in need of relief, or what kind of relief is to be furnished. The courts have to a large extent, however, clarified those concepts and provided guidelines for the administration of the general assistance programs of the counties and towns. *See generally* Kravit, *Standards for General Assistance in New Hampshire: An Analysis and Proposal*, 16 N.H.B.J. 136, 153–60 (1974).

 Almost a century ago this court said that the statute is to be administered to promote its "humanitarian purpose." *Derry v. Rockingham*, 64 N.H. 499, 500, 14 A. 866, 867 (1888); *see Glidden v. Unity*, 30 N.H. 104, 122–23 (1855); *Town of Poplin v. Town of Hawke*, 8 N.H. 305, 307 (1836). Once need is established, the relief to be granted will vary depending on the individual circumstances of the person in need. *Merrimack County v. Concord*, 39 N.H. 213, 217 (1859); *see Moultonboro v. Tuftonboro*, 43 N.H. 316, 319 (1861). Additionally, this court has recognized that towns and counties may have the responsibility to pay for the care of the sick, even when unusual circumstances increase the cost of such care. *Merrimack County v. Concord*, 39 N.H. at 217.

Prior to 1976, local governments made decisions about who was eligible for assistance, and what type of relief should be granted, on an *ad hoc* basis. In 1976, however, the United States District Court for the District of New Hampshire ruled that this standardless administration of RSA chs. 165 and 166 violated the due process rights of the applicants under the general assistance program and ordered the defendant county to promulgate reasonable written standards for the administration of the program. *Baker-Chaput v. Cammett*, 406 F. Supp. at 1140. Allegedly in fulfillment of this order, the defendant county promulgated the challenged regulation setting an income ceiling of $714 per month for eligibility for nursing home care assistance.

██ ██ A written standard promulgated by the county is proper

only if it bears a reasonable relationship to the intended purpose of the statute it is executing. *See Kimball v. N.H. Bd. of Accountancy,* 118 N.H. 567, 568–69, 391 A.2d 888, 889 (1978); *Harkeem v. N.H. Dep't of Empl. Sec.,* 115 N.H. 658, 661, 348 A.2d 711, 713 (1975). The regulation in issue here violates the mandate of RSA chs. 165 and 166 because the $714 income cap bears no relationship to the actual need of persons such as the plaintiff who are unable to pay the cost of medically necessary nursing home care, which averages at least $1,200 per month.

This decision does not in any way detract from the county's authority to promulgate standards of eligibility requirements for nursing home care assistance as long as the regulations are in harmony with the intent of the general assistance statute. *See Kimball v. N.H. Bd. of Accountancy,* 118 N.H. at 568–69, 391 A.2d at 889. For example, a standard or regulation giving the county the right to require placement of an applicant in the least expensive certified nursing home bed available, or which would set the eligibility requirement at a level which would reflect the average cost of nursing home care in the county, would probably withstand challenge.

We next address the defendant's argument that the enactment of the State's Medicaid program (RSA ch. 167) limited the towns' and counties' obligations to provide medical assistance to persons eligible for Medicaid assistance only. RSA 167:18.

The enactment of the State Medicaid program (RSA ch. 167) did not repeal or amend the obligation of counties and towns under RSA chs. 165 and 166. Further, there is no indication in the legislative history or in the case law that the legislature impliedly intended to limit the availability of public assistance for medically related needs exclusively to persons who are eligible for Medicaid. In light of the deeply rooted and long-standing obligation of local governments to provide assistance to all needy persons under RSA chs. 165 and 166, we refuse to infer that the Medicaid program was intended to supplant the counties' obligations under RSA chs. 165 and 166.

The plaintiff in this case is a "county pauper," RSA 166:1 (Supp. 1981), and is entitled to assistance under the counties' general assistance program. RSA 166:10 (Supp. 1981).

Finally, we deal with the defendant's argument that a ruling for the plaintiff will lead to the irrational result that every time the taxpayers decide to limit the State Medicaid benefits to a more narrowly drawn class of individuals, the defendant will have

to provide local welfare for those who become ineligible for state welfare. While it is at least arguable that today's economic pressures may warrant a retreat from our existing welfare structure, which relies on local assistance as the provider of last resort, such a sweeping policy change should be undertaken, if at all, by the State legislature. In the absence of legislation, the counties and towns must continue to provide assistance for *all* individuals who are poor and unable to support themselves. *Derry v. Rockingham*, 64 N.H. at 500, 14 A. at 867.

*Affirmed.*

KING, C.J., did not sit; the others concurred.