Hillsborough
No. 7677

JAMES HARKEEM

v.

BENJAMIN C. ADAMS, COMMISSIONER,
NEW HAMPSHIRE DEPARTMENT OF EMPLOYMENT SECURITY
ABINGTON SHOE COMPANY
MILLER SHOE—DOVER c/o MELVILLE SHOE CORP.

August 29, 1977

688

*Wadleigh, Starr, Peters, Dunn & Kohls* and *James C. Wheat* (*Mr. Wheat* orally), for the plaintiff.

*Edward F. Smith, Michael M. Black, Andre J. Barbeau, Paul V. Kenneally, Robert L. Hermann, Jr., Lonnie E. Siel* (*Mr. Black* orally), for the New Hampshire Department of Employment Security.

DOUGLAS, J.   In *Griffin v. New Hampshire Department of Employment Security*, 117 N.H. 108, 370 A.2d 278 (1977), we declined to answer the question whether the superior court, in the exercise of its general equitable powers, can order a party who has instituted or prolonged litigation through bad faith or obstinate, unjust, vexatious, wanton, or oppressive conduct, to pay his opponent's counsel fees. That question is now presented to us, and we answer it in the affirmative.

The plaintiff, James Harkeem, does not appear before this court for the first time. Part of the facts of this case have been previously recounted in *Harkeem v. Department of Employment Security*, 115 N.H. 658, 348 A.2d 711 (1975), and need be summarized only briefly here. On March 23, 1973, Mr. Harkeem voluntarily retired from his employment with the Encore Shoe Company of Manchester, New Hampshire, having spent the preceding thirty-five years of his life working in the shoe industry of this state. He applied for unemployment compensation benefits, which were

denied on the grounds that he had voluntarily retired. No appeal was taken, and the determination became final. In August 1973, the plaintiff returned from retirement to work at the Melville Shoe Corporation in Dover, New Hampshire. This employment terminated on September 14, 1973, and Mr. Harkeem filed for unemployment compensation benefits on September 19, 1973. His claim was rejected by the department's certifying officer and appeal tribunal, on the basis that under RSA 282:4 K and the defendant's implementing Regulation 32, his prior voluntary retirement had cancelled Mr. Harkeem's accumulated wage credits. The validity of this interpretation was contested by the plaintiff in proceedings in the superior court and in this court, which on November 28, 1975, rendered a decision in the plaintiff's favor. *Harkeem v. Dep't of Empl. Sec.*, 115 N.H. 658, 348 A.2d 711 (1975).

During the pendency of the litigation of the plaintiff's September 1973 claim, Mr. Harkeem found new employment at the Abington Shoe Company in Newmarket, New Hampshire. This employment was terminated in May, 1974, after a three-month trial period, and Mr. Harkeem again filed for unemployment compensation benefits. This claim, which is the subject of the instant action, was denied by a certifying officer of the defendant, and by its appeal tribunal in June 1974. The sole basis for the denial was the same as that which supported the rejection of Mr. Harkeem's previous claim: that his voluntary retirement in March, 1973, cancelled the wage credits he had earned in his previous thirty-five years of employment, leaving him with insufficient credits to qualify for benefits.

Action on this second claim was held in abeyance at the trial court level by agreement of the parties pending this court's decision on the question of law presented by the plaintiff's first claim, which was also controlling in the second. When the decision in the plaintiff's favor was rendered, a request was made by his counsel to the defendant that benefits be paid for the second claim period. The defendant refused, and a hearing was held in superior court on May 27, 1976. At that hearing, the defendant no longer pursued the wage credit question, as that issue had been conclusively settled against it. Instead the department sought to raise the entirely new ground that the plaintiff had failed to sufficiently expose himself to employment, as required by RSA 282:3 C. The Trial Court (*Bois*, J.) found that "the State of New Hampshire had no evidence whatsoever to indicate that there were any grounds

to disqualify the claimant but those based on the commissioner's interpretation of Regulation 32 A (2) prohibiting the payment of benefits on the basis of annual earnings prior to retirement"; that "the defendants were arbitrary, capricious, frivolous and unreasonable in their conduct toward the plaintiff after November 28, 1975"; and that "[t]he defendants with premeditation ignored and violated any and all principles of fair play and equitable conduct by a sovereign with unlimited resources in relation to one of its citizens." Accordingly, the court awarded the plaintiff the benefits which he sought in the amount of $1,104. Furthermore, "based on its equity powers as well as on its duty to see justice done," the court assessed interest and costs incurred by the plaintiff subsequent to November 28, 1975, as well as counsel fees in the amount of one-third of the recovery. The defendant contends that the award of counsel fees does not lie within the court's powers in a case of bad faith conduct, and that in any event the finding of bad faith was not properly made on the facts of the instant case.

■ Exceptions to the general rule that parties pay their own counsel fees have been judicially fashioned in the past. *See Guay v. Association*, 87 N.H. 216, 177 A. 409 (1935). These exceptions are flexible, not absolute, and have been extended on occasion. *See, e.g., Concord Nat'l Bank v. Haverhill*, 101 N.H. 416, 145 A.2d 61 (1958); *Lavoie v. Bourque*, 103 N.H. 372, 172 A.2d 565 (1961); *cf.* Doleac, *Court Awarded Attorneys' Fees Under New Hampshire Common Law*, 17 N.H.B.J. 134 (1976).

■■ Underlying the rule that the prevailing litigant is ordinarily not entitled to collect his counsel fees from the loser is the principle that no person should be penalized for merely defending or prosecuting a lawsuit. An additional important consideration is that the threat of having to pay an opponent's costs might unjustly deter those of limited resources from prosecuting or defending suits. *Tau Chapter v. Durham*, 112 N.H. 233, 237, 293 A.2d 592, 594 (1974); *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 718 (1967). However, when overriding considerations so indicate, the award of fees lies within the power of the court, and is an appropriate tool in the court's arsenal to do justice and vindicate rights. *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 259 (1975); *Mills v. Electric Auto-Lite*, 396 U.S. 375, 391–92 (1970); *see* RSA 491: App. R. 56 (Supp. 1975). Bad faith conduct held to justify the award of counsel fees has

been found where one party has acted "in bad faith, vexatiously, wantonly, or for oppressive reasons," *Newman v. Piggie Park Enterprises*, 390 U.S. 400, 402 n.4 (1968); 5 J. Moore, Federal Practice ¶ 54.77 [27], at 1709 (2d ed. 1974), where the litigant's conduct can be characterized as unreasonably obdurate or obstinate, *Stolberg v. Members of Bd. of Trustees for State Col. of Conn.*, 474 F.2d 485, 490 (2d Cir. 1973), and where it should have been unnecessary for the successful party to have brought the action. *Bradley v. School Board of City of Richmond*, 345 F.2d 310, 321 (4th Cir. 1965), *vacated on other grounds*, 382 U.S. 103 (1965).

■ Where an individual is forced to seek judicial assistance to secure a clearly defined and established right, which should have been freely enjoyed without such intervention, an award of counsel fees on the basis of bad faith is appropriate. Comment, *Court Awarded Attorney's Fees and Equal Access to the Courts*, 122 U. Pa. L. Rev. 636, 661 (1974). Comment, 8 Conn. L. Rev. 551, 554–55 (1976). This principle, which merely shifts the cost of what should have been an unnecessary judicial proceeding to the responsible party, has long been recognized in New Hampshire in a related line of cases wherein attorneys' fees have been awarded on the basis of the courts' power to enforce their own decrees. *See, e.g., Manchester v. Hodge*, 75 N.H. 502, 504, 77 A. 76, 77 (1910); *Fowler v. Owen*, 68 N.H. 270, 39 A. 329 (1895). When an individual is of limited means, as is so often the case in unemployment compensation actions, the shifting of counsel fees to an opposing party who has acted in bad faith to prolong the litigation does not run counter to the policy of the general rule discussed above. Rather an award in such an instance will further the intent of the rule, because protection will thereby be provided against the danger that lack of funds will prevent needed access to the courts. *Rolax v. Atlantic Coastline R. Co.*, 186 F.2d 473, 481 (4th Cir. 1951); *Doe v. Poelker*, 515 F.2d 541, 548 (8th Cir. 1975).

An unemployment compensation claimant is usually an individual without financial resources to cover litigation costs. Plaintiff's right to benefits was clearly established by RSA ch. 282, and by our decision in *Harkeem v. Department of Employment Security*, 115 N.H. 658, 348 A.2d 711 (1975). That victory was hard won by him, for the diligence of the defendant compelled him to pursue his claim through every available legal channel before he obtained vindication. However, instead of ceding to him the fruits of his victory, the department, contrary to both statute and estab-

lished case law on both the supreme and superior court levels, sought to subject him to further litigation by raising new arguments before the superior court.

RSA 282:5 C (6), which deals with decisions of the department's appeals tribunal, requires that a written decision be prepared in all cases, setting forth "all the material findings necessary to support the [tribunal's] conclusions" and determining "all things necessary to dispose of the case." The statute specifies that "[t]he decision of an appeal tribunal shall be deemed to be the decision of the commissioner of the department of employment security for *all subsequent actions in connection therewith.*" (Emphasis added.) It is provided that the decision "shall become final" upon the expiration of the tenth day following its mailing to the plaintiff. RSA 282:5 C (5). Although the decision may be reopened upon request of an interested party or upon the commissioner's own initiative, the legislature has expressly limited the further hearing to the introduction of evidence or argument "relative to and concerning the factors which constitute the basis of grounds for the reopening." RSA 282:5 E (2).

Had the question of the scope of the superior court's review never before been raised the defendant could argue that it could not be found to be in bad faith herein, for it would be entitled to rely on its argument that the term "de novo" in RSA 282:5 G(3) authorized it to raise new grounds before the superior court. However, prior case law from this court has conclusively settled the question. In *Chaisson v. Adams,* 114 N.H. 219, 317 A.2d 791 (1974), the defendant herein moved to dismiss a claimant's appeal to the superior court under RSA 282:5, arguing that the petition had failed to state a cause of action. We noted then that the appeal procedure, as expressly set forth in RSA 282:5 G(3), requires only that a claimant's petition set forth specifically the grounds upon which it is claimed the appeal tribunal's decision is in error. Thus the superior court's de novo review takes place within the parameters set by the claimant's petition. The introduction of new issues by the department at this stage is wholly inappropriate.

Accordingly, the department, knowing that it was limited to its own stated reasons for denying Mr. Harkeem's claim, had no valid reason to deny the plaintiff benefits after this court's ruling of November 28, 1975. Its obdurate pursuit of further fruit-

less litigation showed a callous disregard for the rights of the plaintiff, and resulted in a needless drain upon the resources of the judicial system of this state. The award of attorney's fees against the defendant department in the instant case was proper.

*Exceptions overruled.*

BOIS, J., did not sit; the others concurred.