Personnel Commission
No. 78-057
No. 7834

## LEONA I. FOOTE

v.

## STATE PERSONNEL COMMISSION

September 27, 1978

*Upton, Sanders & Smith*, of Concord (*Gilbert Upton* orally), for the plaintiff.

*Thomas D. Rath*, attorney general (*Steven J. McAuliffe*, attorney under Rule 23, orally), for the State.

BOIS, J.    This case is a sequel to *Foote v. State Personnel Commission*, 116 N.H. 145, 355 A.2d 412 (1976), in which we remanded the affirmance by the State personnel commission [hereinafter the commission] of the plaintiff's dismissal from State employment. After our decision in that case, the commission reinstated the plaintiff and agreed to award her back pay. The issues now before us are whether the commission erred in denying the plaintiff an award of lost annual leave and paid holidays, attorney fees, interest, and transcript costs, and whether the commission erred in deducting from the plaintiff's back-pay award the amount of unemployment compensation she received while she was wrongfully not employed by the State.

■ Our review is circumscribed by RSA 541:13. The commission's findings of fact are prima facie lawful and reasonable and its orders must be sustained, except for errors of law, unless the clear preponderance of the evidence establishes that the order is unjust or unreasonable. *Jeannont v. N.H. Personnel Commission*, 118 N.H. 597, 392 A.2d 1193 (1978). We affirm in part and remand.

We briefly summarize the facts of *Foote I*. Superintendent Rich sent the plaintiff two letters dated April 3 and April 5, 1974, indicating to her his dissatisfaction with her work in a state health care facility. The letters further urged the plaintiff to seek employment elsewhere. Upon receiving the April 3 letter, the plaintiff became emotionally distressed. In order to prevent the plaintiff from becoming more distraught, her adult son intercepted the subsequent April 5 letter before it could come to her attention. The son returned it to Superintendent Rich at his private residence. Plaintiff's inaction in response to the April 5 letter was the basis of her termination.

The plaintiff, although consulting with her immediate supervisor about the matter, never contacted Superintendent Rich directly to discuss her status. Neither did Rich speak to the plaintiff until April 11 when he summonsed her for a conference in his office subsequent to a psychiatrist's report recommending her termination. Following the April 11 conference, the superintendent decided to fire the plaintiff despite the fact that it was clear that she had no knowledge of the contents of the April 5 letter.

Superintendent Rich terminated the plaintiff in a letter dated April 18 citing "willful insubordination" as the basis for termination.

The plaintiff appealed this dismissal to the commission, which affirmed. We then remanded the affirmance for further findings of fact. After remand and before such findings were issued, the plaintiff moved that the commission grant a rehearing on the basis of newly discovered evidence. The commission granted the motion and on February 4, 1977, heard testimony from two witnesses. One witness was Leland Libbey, who previously had claimed that he could not recall having discussed the April 5, 1974 letter with the plaintiff. Libbey now recanted, admitting that he had been untruthful when he denied being able to remember whether the plaintiff asked him what she should do about the letter. On June 6, 1977, the commission by a split decision reaffirmed its original order upholding the plaintiff's discharge. However, after the plaintiff filed an appeal from that reaffirmance, the commission reversed itself and ordered the plaintiff reinstated to her former position.

In the present ch. 541 appeal, the plaintiff first claims that the commission erred in failing to recompense her for lost annual leave and paid holidays. She calculates that she would have accrued 52½ days of annual leave had she been working for the State during the period between her wrongful discharge and her reinstatement. However, rule VII, section 3 of the rules of the department of personnel does not allow an employee working five days per week to accumulate more than 30 days of annual leave. The plaintiff therefore was credited with only 30 days of annual leave when she was reinstated, instead of 52½. She asserts this was error. She also contends that the commission erred when, in reducing her back-pay award by the amount of wages she earned at other jobs she filled while unemployed by the State, the commission failed to take into account that she had worked 23 holidays that would have been paid holidays had she still been working for the State.

■ We treat the claims for annual leave and paid holidays separately. The commission denied the claim for accumulated annual leave in excess of 30 days because "the extent of such accumulation, had Mrs. Foote been continuously employed, would be entirely speculative." We affirm this denial. Had the plaintiff been continuously employed by the State from April 1974 to September 1977, she might have "lost" the extra 22½ days by failing to use them. If she had not taken advantage of those 22½ days, she would have been in the same position that she is in now; she would have accumulated only 30 days of annual leave. The plaintiff made no showing that she would probably have used those extra days of leave. She did not, for example, introduce evidence that in the past she had taken her leave days off instead of letting them lapse. The denial of a credit for the 22½ days was therefore proper.

■ We order the plaintiff compensated for the paid holidays she lost due to her improper discharge. The commission made no express finding on the plaintiff's request for a credit for paid holidays. We think, however, that a paid holiday is a fringe benefit accruing to State employees because of their employment contracts and might well have served as an inducement for the plaintiff's entry into State service. See *Jeannont v. N.H. Personnel Commission supra.* It forms part of an employee's compensation and, unlike an annual leave day, may not be deemed forfeited if an employee fails to take the day off. *See* rule VII, section 2 of the rules of the department of personnel. Therefore, on remand the commission should credit the plaintiff with the paid State holidays on which she worked.

The plaintiff's second claim is that the commission erred in refusing to award her attorney fees. She argues that the instant case comes within the rule of *Harkeem v. Adams*, 117 N.H. 687, 377 A.2d 617 (1977), in which we held that if litigation is instituted or unnecessarily prolonged through a party's oppressive or bad faith conduct, the court may award attorney fees to the party's opponent. We hold that *Harkeem* does not apply to the present case.

■ ■ The plaintiff has introduced no evidence that her ultimate supervisor, Mr. Rich (the appointing authority), induced Mr. Libbey's false testimony. Nor does the record suggest that any agent of the State that instituted or prolonged the present action knew of and acquiesced in the false testimony. Rather, the plaintiff's claim of "bad faith" is that Libbey's bad faith in apparently perjuring himself should be attributed to Rich because "Libbey buckled under pressure and fear of harassment from Rich." This claim must be rejected. Perjury may be attributed to the State— which may then be held liable for attorney fees—only if the perjury is induced, acquiesced in, or committed by a State agent who dismisses a State employee or who actively assists the State in contesting her appeal of her dismissal. In the case at bar the apparent perjury is not attributable to the State. The commission therefore properly applied the general rule that parties should pay their own counsel fees. *See Harkeem v. Adams*, 117 N.H. 687, 377 A.2d 617 (1977).

■ ■ We find no merit in the plaintiff's objection to the commission's denial of transcript costs. According to the plaintiff, a transcript fee "is a legitimate item in taxation of costs" and so should be awarded to the prevailing party. She cites RSA 525:1, which provides that: "Costs shall follow the event of every action or petition, unless otherwise directed by law or by the court." However, another statute specifically allocates transcript costs in an appeal under RSA ch. 541 from a personnel commission order. RSA 98:14-a requires "the party making the appeal" to pay transcript costs. We disagree with the plaintiff's contention that RSA 98:14-a deals only with the question who should *initially* pay transcript costs in an appeal, and that transcript costs should ultimately be assessed in favor of the party succeeding on appeal. The general rule is that costs may not be awarded against the sovereign. *See Ranger v. N.H. Youth Development Center*, 118 N.H. 163, 384 A.2d 493 (1978). RSA 98:14-a is a limited exception to this prohibition; it waives sovereign immunity in the situation in which the State files an appeal under RSA ch. 541

from a personnel commission order. If the legislature intended further to waive sovereign immunity—so as to make the State liable for transcript costs every time it lost on appeal, even if it were not the appealing party—the legislature would have spoken more clearly. *See Ranger v. N.H. Youth Development Center supra.*

The plaintiff does not claim to be indigent. Thus the indigency exception to RSA 98:14-a, recognized in *Colburn v. Personnel Commission*, 118 N.H. 60, 382 A.2d 907 (1978), is inapposite.

■ ■   The plaintiff next argues that she should be awarded interest on her back pay. However, in the absence of a statute waiving sovereign immunity expressly or by clear implication, interest may not be awarded against the State. *State v. Peter Salvucci & Sons, Inc.*, 111 N.H. 259, 281 A.2d 164 (1971). The plaintiff asserts that RSA 98:15 does clearly imply a legislative intent to waive sovereign immunity from interest. She relies on the provision in the statute that the commission in reinstating an employee may make such order "as it may deem just." However, to read this language as clearly implying a waiver of sovereign immunity would stretch the words too far. The discretion conferred on the commission by RSA 98:15 does not extend to the allowance of interest in this case.

*State v. Peter Salvucci & Sons, Inc.*, 111 N.H. 259, 281 A.2d 164 (1971), is not to the contrary. In *Salvucci* we held that the legislative history and specific phrasing of RSA 491:8 permitted the superior court to add interest to a verdict for breach of contract recovered against the State. The history and phrasing of RSA 98:15, however, do not sufficiently demonstrate a legislative purpose to waive sovereign immunity from interest. *See Tau Chapter v. Town of Durham*, 112 N.H. 233, 293 A.2d 592 (1972).

■ ■   The plaintiff's final contention is that the commission erred in deducting from her back-pay award the amount of unemployment compensation she received. The theory of this argument is that her unemployment compensation came from a collateral source, like insurance proceeds, and so is not deductible from her recovery. We disagree. The commission's power to make such orders as it may deem just should be exercised to make the plaintiff whole, to compensate her, and not to penalize the State. *See Chernoff v. Pandick Press, Inc.*, 440 F. Supp. 822 (S.D.N.Y. 1977); *Hood v. Lawrence*, 138 F. Supp. 120 (D.N.H. 1955). We hold that whenever a wrongfully discharged State employee is reinstated and is awarded back pay, her award is to be reduced by the amount of unemployment compensation, if any, she received while wrongfully not employed by the State.

Of course, if the plaintiff is required to reimburse the State for any or all of the unemployment compensation she has received, her back-pay award will be increased by the amount of such reimbursement. *See Chernoff v. Pandick Press, Inc.*, 440 F. Supp. 822 (S.D.N.Y. 1977).

We remand to the commission for findings and an award consistent with this opinion.

*Remanded.*

BROCK, J., did not sit; the others concurred.