Lowes v. Cabletron                    CV-96-077-M    02/05/99

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


Darlene Lowes,
      Plaintiff

      v.                                        Civil No. 96-77-M

Cabletron Systems, Inc.,
      Defendant


**O R D E R**

Darlene Lowes brought this breach of contract action against her former employer, Cabletron Systems, Inc., claiming that Cabletron wrongfully refused to honor certain stock options issued to her under the Cabletron 1989 Equity Incentive Plan. She also claimed that Cabletron wrongfully refused to issue her a number of shares in Gratias Corporation, pursuant to the Gratias Corporation 1989 Restricted Stock Plan.


Prior to trial, the parties agreed that Lowes' contract claims were not preempted by ERISA, and the substantive law of New Hampshire governed.[1]  The matter was tried to a jury which returned a verdict in favor of plaintiff, and concluded that the damages to which she was entitled should be measured by the value of the disputed stock as of April 25, 1991, the date on which her employment was terminated.  See Jury Verdict Form (document no.

---

[1]    On several occasions, the court specifically asked the parties whether plaintiff's claimed entitlement to stock and options under the Cabletron plans was preempted by ERISA (as an ERISA-governed ESOP).  See, e.g., Orders dated December 13, 1996 and November 27, 1997.

100). Pending before the court are several post-trial motions filed by the parties.

## Discussion

I. Cabletron's Motions for a Judgment as a Matter of Law or a New Trial.

Cabletron advances four arguments in support of its motions for judgment as a matter of law or for a new trial:

1. There was insufficient evidence to support a verdict for plaintiff insofar as there was no evidence of causation or bad faith on Cabletron's part;

2. The jury was improperly instructed as to the appropriate standard by which to assess Cabletron's conduct;

3. Plaintiff's claims are barred by the statute of limitations; and

4. Plaintiff's claims were barred by the July, 17, 1991 release.

As to Cabletron's first claim, the court disagrees. The evidence produced at trial was sufficient to persuade a reasonable trier of fact that Cabletron breached its obligation of good faith and fair dealing implicit in every New Hampshire contract when, after numerous delays, it finally determined that plaintiff was not entitled to the stock and options she claimed. While there was certainly evidence on both sides of the issue, see generally Order dated November 25, 1997, the evidence presented by plaintiff was sufficient, if credited by the jury, to sustain her burden of proof.

2

Next, Cabletron asserts that the court erroneously instructed the jury as to the appropriate standard by which to measure Cabletron's alleged breach of the implied covenant of good faith and fair dealing.  It claims:

> the wrong legal standard was used, as the appropriate standard is whether Cabletron abused its discretion rather than whether it breached its implied duty of good faith and fair dealing.  As in ERISA cases, the Cabletron decisions should be afforded great deference and reviewed under the arbitrary and capricious standard, not the good faith and fair dealing standard.

Cabletron's motion for new trial (document no. 105) at 2. Cabletron is only partly correct.  The ultimate issue in this case was whether Cabletron breached its implied contractual obligation to act fairly and in good faith when it considered and rejected Lowes' claim to the disputed stock.  However, Cabletron is correct in pointing out that, in order to determine whether Cabletron breached that duty, the jury had to first determine whether Cabletron abused its discretion or otherwise acted arbitrarily or unreasonably when, in exercising its broad discretion, it concluded that Lowes was not entitled to that stock.  The court clearly and specifically instructed the jury on this point:

> To carry her burden of proof and demonstrate that Cabletron breached the implied duty of good faith and fair dealing it owed to her under the stock and/or option agreement, Ms. Lowes must prove, by a preponderance of evidence, that:
>
> > 1.   Cabletron's <u>exercise of its discretion</u> under the terms of the Plans <u>exceeded the limits of</u>

3

reasonableness, <u>thwarted plaintiff's justified expectations</u>, or otherwise constituted an <u>abuse of discretion</u>; and

2.   Cabletron's <u>abuse of discretion</u> caused the plaintiff to suffer economic loss.

To determine whether Cabletron (acting through its Board of Directors and/or the Incentive Compensation Committee) breached the implied covenant of good faith and fair dealing with regard to either one of the Plans, you must determine whether the decision to deny her stock under the Gratias Stock Plan and to deny her options under the Equity Incentive Plan was consistent with the terms of those contracts, faithful to the parties' purpose in entering into those contracts, and consistent with plaintiff's justified expectations under those contracts.

<u>You may not, however, substitute your judgment for that of Cabletron</u>.  Instead, you must determine whether, based upon the evidence available to it at that time, Cabletron breached its implied obligation to act fairly and in good faith when, based upon the evidence presented to it, it denied plaintiff's request for stock and options.

Jury Instructions, at 14-15 (emphasis supplied).  Thus, the court plainly instructed the jury that before it might find that Cabletron breached its implied contractual obligation of good faith and fair dealing, it must first determine whether it abused its discretion or otherwise acted arbitrarily or unreasonably in denying plaintiff's request for the disputed stock.  Those instructions were consistent with the governing law of New Hampshire, and nothing has been offered to suggest the jury did not faithfully follow those instructions in returning its verdict.  (Each juror was provided with a copy of the written instructions.)

4

As to the final two arguments advanced by Cabletron (i.e., statute of limitations and effect of the workers' compensation release), they have been addressed on several prior occasions by the court and further detailed discussion is unnecessary. See, e.g., Order dated December 13, 1996. In support of its renewed statute of limitations argument, Cabletron now points to a letter dated December 4, 1991, in which Dr. Hilton opined that plaintiff "has been totally disabled [from] May 16, 1990 to [in]determinate at this time." Based upon that letter, Cabletron reasons that plaintiff knew (or should have known) that she was contractually entitled to the stock and options (by reason of her permanent disability) more than three years before she filed this suit.

The court again rejects this argument. Cabletron's view on this issue would allow for a scenario in which an employee makes a timely demand for the stock to which she is entitled, but Cabletron then delays any decision on that request until more than three years after the employee's termination, thereby precluding the employee from bringing a "timely" suit on the contract. Plaintiff's cause of action accrued when Cabletron unreasonably and unfairly denied her timely request for the stock and options and, by so doing, breached its implied contractual obligations to her. Her cause of action did not accrue simply because she became aware of her entitlement to the stock. Instead, an actionable claim accrued against Cabletron when it breached its contractual obligations to her and wrongfully

5

refused to issue the stock and denied her request to exercise the options. Those breaches both occurred within the three year statute of limitations.

In short, Cabletron's claims for relief based on the statute of limitations and the effect of the 1991 worker's compensation release (which was discussed in the court's order of December 13, 1996) are unavailing.

II. Darlene Lowes' Post-Trial Motions.

A. Motion to Alter Judgment.

Plaintiff contends that the jury incorrectly determined that she was entitled to the stock and options as of April 25, 1991, the date on which her employment with Cabletron terminated. In other words, she claims that the jury erred in determining that her damages should be measured by the value of the Cabletron stock and options as of that date. She says that the proper date on which to measure the value of the disputed stock (and her damages) was April 28, 1997, the date on which Cabletron finally issued its decision denying her the claimed stock (as is probably obvious to the reader, the value of the disputed options and shares of stock appreciated substantially between 1991 and 1997).

Plaintiff also claims that the court, rather than the jury, should have decided the date on which her damages were properly

6

measured. Thus, she asserts that, "This Court's decision to allow the jury to determine the date on which shares immediately vested or were immediately exercisable was a manifest error of law, and the jury's conclusion that Ms. Lowes' rights vested and became exercisable as of 25 April 1991 was a manifest error of fact." Plaintiff's memorandum (document no. 104) at 2.[2]

Underlying this dispute are the parties' differing interpretations of the language contained in the stock and option plans. The Gratias Corporation 1989 Restricted Stock Plan provides, in relevant part, as follows:

> <u>Forfeiture</u>. Unvested Shares shall be forfeited to the Company if the full-time employment of the Participant with Cabletron and its wholly-owned subsidiaries terminates for any reason, provided, however, that in the event the employment of the Participant terminates by reason of death or permanent disability (as determined by the Board of Directors of the Company in its sole discretion) of the Participant, all Unvested Shares <u>shall immediately become Vested Shares</u>.

Gratias Corporation 1989 Restricted Stock Plan, at para 7(c) (emphasis supplied). The Equity Incentive Plan contains similar language:

---

[2] Although plaintiff raised her concerns regarding the court's proposed jury instructions and proposed jury verdict form in the charging conference, it is unclear whether she preserved any objection to those instructions or the jury verdict form on the record. <u>See</u> Trial Transcript, November 30, 1998, at 38. <u>But see</u> Motion for Clarification of Damages (document no. 94) (in which plaintiff asserts that the court, not the jury, should determine the date on which her damages should be measured).

7

> If a Participant ceases to be an Employee by reason of retirement with consent of the Company after attainment of age 62, death or total and permanent disability (as determined by the Committee), the following will apply:
>
> (a) Subject to paragraph (c) below, each Option and Stock Appreciation Right held by the Participant when his or her employment ended <u>will immediately become exercisable in full</u> and will continue to be exercisable until the earlier of (1) the third anniversary of the date on which his or her employment ended, and (2) the date on which the Award would have terminated had the Participant remained an Employee.

Cabletron Systems, Inc. 1989 Equity Incentive Plan at para. 7.1 (emphasis supplied).

Under New Hampshire law, the interpretation of a contract presents a mixed question of law and fact; while the interpretation of unambiguous contractual provisions presents a question of law, the interpretation of ambiguous provisions presents questions of fact. A clause contained in a contract "is ambiguous when the contracting parties reasonably differ as to its meaning." <u>Laconia Rod & Gun Club v. Hartford Accident and Indemnity Co</u>, 123 N.H. 179, 182 (1983). And, as the Court of Appeals for the First Circuit has noted, "the general rule is that whether a contract is clear or ambiguous is a question of law . . . .. If the contract is deemed to be ambiguous, then the intention of the parties is a question of fact." <u>In re Navigation Technology Corp.</u>, 880 F.2d 1491, 1495 (1st Cir. 1989)(citations omitted)(cited with approval in <u>Public Service Co. of N.H. v. Town of Seabrook</u>, 133 N.H. 365, 370 (N.H. 1990)).

8

Prior to submitting the issue to the jury, the court concluded that the highlighted phrases in the stock and option plans were ambiguous (a legal determination) and, therefore, their proper interpretation presented a factual question. That is to say, the jury, not the court, was properly charged with resolving the ambiguity and determining what the parties meant when they agreed that the stock or options would be "immediately vested" or "immediately exercisable."[3]

The jury was specifically instructed on this issue. See Jury Instructions at 18-19. And, in their closing arguments, counsel for both parties summarized for the jury their client's respective views on this issue. The jury concluded that the ambiguous contract terms, properly construed, provided that the disputed stock and options vested "immediately" upon Lowes' termination. That conclusion was entirely consistent with the evidence presented at trial. At a minimum, neither the jury's verdict on that issue nor the court's determination that it was a factual, rather than legal, question constitutes a manifest error of law or fact. See Aybar v. Crispin-Reyes, 118 F.3d 10, 16 (1st

---

[3] In support of her view that the court, not the jury, should interpret the meaning of the "immediately vested" language, plaintiff points to one of the court's earlier orders, in which it held that the language of the plans was "plain and unambiguous." Order dated November 25, 1997, at 12. Contrary to plaintiff's suggestion, however, the court merely concluded that, "neither plan requires an employee to present evidence at the time of his or her termination demonstrating that he or she is totally and permanently disabled." Id. The court did not address the "immediately vested" language which is now at issue.

Cir. 1997) ("Rule 59(e) allows a party to direct the district court's attention to newly discovered material evidence or a manifest error of law or fact.") (citation omitted), cert. denied, 118 S.Ct. 857 (1998); Federal Deposit Ins. Corp. v. World Univ., Inc., 978 F.2d 10, 16 (1st Cir. 1992) ("Motions under Rule 59(e) must either clearly establish a manifest error of law or must present newly discovered evidence.").

B.    Plaintiff's Motions for Attorney's Fees.

Plaintiff claims that she is entitled to an award of attorney's fees under New Hampshire common law because Cabletron acted in bad faith in failing to acknowledge that she was entitled to the disputed stock and options. Additionally, plaintiff claims an entitlement to attorney's fees under Federal Rule of Civil Procedure 37, asserting that Cabletron demonstrated bad faith in refusing to admit or deny certain requests for admissions.

1.    New Hampshire Common Law.

In discussing the circumstances under which a prevailing party may recover attorney's fees from his or her opponent, the New Hampshire Supreme Court has held:

> Underlying the rule that the prevailing litigant is
> ordinarily not entitled to collect his counsel fees
> from the loser is the principle that no person should
> be penalized for merely defending or prosecuting a
> lawsuit. An additional important consideration is that
> the threat of having to pay an opponent's costs might
> unjustly deter those of limited resources from

10

prosecuting or defending suits. However, when overriding considerations so indicate, the award of fees lies within the power of the court, and is an appropriate tool in the court's arsenal to do justice and vindicate rights. Bad faith conduct held to justify the award of counsel fees has been found where one party has acted "in bad faith, vexatiously, wantonly, or for oppressive reasons," where the litigant's conduct can be characterized as unreasonable obdurate or obstinate, and where it should have been unnecessary for the successful party to have brought the action.

Harkeem v. Adams, 117 N.H. 687, 690-91 (1977) (citations omitted). The court concluded that, "[w]here an individual is forced to seek judicial assistance to secure a clearly defined and established right, which should have been freely enjoyed without such intervention, an award of counsel fees on the basis of bad faith is appropriate." Id., at 691. More recently, the court has observed that:

The recognized scope of authority to award fees . . . expanded from compensation for those who are forced to litigate in order to enjoy what a court has already decreed, to include compensation for those who are forced to litigate against an opponent whose position is patently unreasonable. In such cases a litigant's unjustifiable belligerence or obstinacy is treated on an objective basis as a variety of bad faith, and made just as amendable to redress through an award of counsel fees as would be the commencement of litigation for the sole and specific purpose of causing injury to an opponent. Thus we have recognized a constitutionally created court's power to award counsel fees in any action commenced, prolonged, required or defended without any reasonable basis in the facts provable by evidence, or any reasonable claim in the law as it is, or as it might arguably be held to be.

Keenan v. Fearon, 130 N.H. 494, 502 (1988) (citations omitted) (emphasis supplied).

11

In this case, Cabletron's conduct was not such that an award of attorney's fees would be either warranted or appropriate. Although the jury was persuaded that plaintiff was entitled to the relief she sought, Cabletron's position was not without support, see generally Order dated November 25, 1997, at 13-15, nor did Cabletron act in a manner that could fairly be characterized as "wanton," "vexatious," "oppressive," "patently unreasonable," or "obdurate." In short, Cabletron presented credible (albeit weak) evidence in support of its view that plaintiff was not totally and permanently disabled when her employment was terminated (as it construed the phrase). Thus, the court cannot conclude that Cabletron acted in a manner that would warrant an award of attorney's fees to plaintiff.[4]

2. Rule 37 and Attorney's Fees.

Plaintiff next claims that she is entitled to attorney's fees because, during the course of discovery, Cabletron refused to admit the genuineness of a Social Security Administration document. See Fed. R. Civ. P. 37(c)(2). However, as plaintiff herself points out, that document "was not only submitted by Ms. Lowes in her exhibits, but was also submitted by Cabletron as a full exhibit. By submitting this Social Security Administration

---

[4] Of course, simply because the jury concluded that Cabletron breached its implied contractual obligation of good faith and fair dealing does not compel the conclusion that Cabletron acted in "bad faith." Lack of good faith is not synonymous with bad faith, at least as the term "bad faith" is used in Harkeem and its progeny.

12

decision as a full exhibit, Cabletron manifested a belief as to its authenticity and genuineness, and did not dispute that it is a true and accurate document." Plaintiff's second motion for attorney's fees (document no. 102) at 6. That statement, however, undermines the very basis for plaintiff's request for fees.

Rule 37 provides that a court may order a party to reimburse the other party for "reasonable expenses" (including attorney's fees) incurred in having to prove the genuineness of a disputed document. Plaintiff has, however, failed to identify any additional expenses that she incurred in having to prove the genuineness of the disputed document. It is difficult to see how plaintiff incurred any expenses when Cabletron admitted the authenticity of the disputed document by identifying it on its exhibit list and marking it as a full exhibit prior to trial. Plaintiff has, therefore, failed to demonstrate that she is entitled to an award of reasonable expenses and attorney's fees related to the Social Security document.

Finally, plaintiff points out that in response to her request for admissions, Cabletron refused to admit that she was totally and permanently disabled when she was terminated (one of the core issues in this case). Thus, having proved her contention at trial, she claims to be entitled to an award of

13

reasonable costs and expenses associated with making that proof. The court disagrees.

Rule 37(c)(2)(C) provides that a party is not entitled to an award of expenses if the court concludes that "the party failing to admit had reasonable ground to believe that the party might prevail on the matter." As discussed above and in prior orders, Cabletron produced evidence supporting its view that Ms. Lowes was not permanently and totally disabled when her employment terminated. Accordingly, an award of reasonable expenses associated with plaintiff's having to prove that contention is not warranted.

## Conclusion

For the foregoing reasons, Cabletron's motion for new trial (document no. 105) and its motion for judgment as a matter of law (document no. 106) are denied. Plaintiff's motions for attorney's fees (documents no. 66 and 102) and her motion to alter judgment (document no. 104) are also denied. Finally, plaintiff's motion for clarification (document no. 94) is denied as moot.

**SO ORDERED**

_____
Steven J. McAuliffe
United States District Judge

February 5, 1999

cc:  John J. Ratigan, Esq.

14

Mark F. Sullivan, Esq.
Andru H. Volinsky, Esq.