NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Cheshire
No. 2017-0422

BEDFORD SCHOOL DISTRICT & a.

v.

STATE OF NEW HAMPSHIRE & a.

Argued: April 17, 2018
Opinion Issued: August 17, 2018

Wadleigh, Starr & Peters, P.L.L.C., of Manchester (Michael J. Tierney on the brief and orally), for the plaintiffs.

Gordon J. MacDonald, attorney general (Anne M. Edwards, associate attorney general, on the brief and orally), for the defendants.

BASSETT, J. The State together with the other defendants (the New Hampshire Department of Education; Margaret Wood Hassan, individually; Christopher T. Sununu, as Governor; Virginia M. Barry, individually; and Frank Edelblut, as Commissioner of the New Hampshire Department of Education) (collectively, the "defendants") appeal an order of the Superior Court (Ruoff, J.) granting the plaintiffs, Bedford School District and William Foote (collectively, "Bedford"), attorney's fees in a case that Bedford had filed to recover adequate education funding that the State withheld in fiscal year 2016 because of a statutory limit on state funding imposed under RSA 198:41, III(b)

(Supp. 2015) (repealed 2015, repeal effective July 1, 2017).  On appeal, the State argues that because the trial court specifically declined to find that the State had acted in bad faith in this litigation, the trial court unsustainably exercised its discretion in awarding attorney's fees.  The State also argues that Bedford waived its right to attorney's fees when it accepted education funds appropriated by a bill that contained a waiver provision.  We reverse.

RSA 198:40-a (Supp. 2017) sets forth the formula that the New Hampshire Department of Education uses to determine "the cost of an adequate education for each municipality based on the . . . pupils who reside in that municipality."  RSA 198:40-a, III.  Before it was repealed, RSA 198:41, III(b) limited the total education grant a municipality could receive to a percentage of the previous year's grant.  See RSA 198:41, III(b).

In 2015, the City of Dover brought a case against the State challenging the constitutionality of the limit that RSA 198:41, III(b) imposed on adequate education funding.  See Dover v. State, Strafford County Superior Court, No. 219-2015-CR-00312 (Tucker, J.).  In the Dover case, the parties reached an agreement (the "Dover Stipulation") in August 2015, which stated:

> In the event that the City is successful in obtaining a preliminary or permanent injunction against the cap required by R.S.A. 198:41 III(b) . . . the State will make a supplemental payment equal to the sum total of all funds withheld in any education adequacy payments made on or after September 1, 2015, because of the application of the cap, within ten (10) business days [of the time the order becomes a final judgment].
>
> Further, in the interests of judicial economy and based on the fact that this is a constitutional challenge to a systematic statewide payment, the State agrees that it will be bound by any rulings issued in this matter regarding the constitutionality of the cap contained in R.S.A. 198:41, III(b) as it applies to all other school districts in the state and that other school districts shall not be required to intervene or join this action, or file separate actions to benefit from any injunctive or declaratory order issued herein.

In June 2016, while the Dover case was still pending, Bedford sought to "enjoin[] the application of the adequacy funding cap imposed by RSA 198:41, III(b)."  The trial court denied the motion, reasoning that the plaintiffs had "failed to sustain their burden of demonstrating irreparable harm" because "any short fall [Bedford] experienced in FY 2016 will likely be remedied by the ruling on the similar issue presented in Dover v. State."  In September 2016, the trial court in Dover granted a permanent injunction, ruling "that the percentage cap is unconstitutional when it operates to reduce the full amount of the statutory grant."  The State did not appeal that decision.  Nor, notably,

did the State distribute the funds withheld from Bedford within ten business days after the order became a final judgment.

In November 2016, Bedford moved for summary judgment, seeking a court order that the State pay Bedford $4,287,533 — the amount that had been withheld in fiscal year 2016 due to the cap. Bedford also requested "reasonable attorneys' fees for needing to bring this action and motion." In its objection, filed in January 2017, the State asserted that the Dover Stipulation did not, in fact, require the State to pay the withheld funds to Bedford within 10 days of the time the Dover order became a final judgment. The State also argued that it should not be required to pay Bedford's attorney's fees.

In January 2017, House Bill (HB) 354-A was introduced in the legislature to appropriate "additional adequate education grants to certain municipalities as calculated in RSA 198:40-a and 198:41." The requested appropriation included the amount withheld from Bedford. As of early April 2017, the bill had not passed. Nonetheless, on April 6, the trial court "order[ed] the State to pay Bedford School District the withheld funds for FY 2016 within 30 days of April 1, 2017." The court also ordered the State to pay Bedford's attorney's fees, citing Harkeem v. Adams, 117 N.H. 687, 691 (1977), for the proposition that an exception to the general rule that parties are responsible for their own attorney's fees is warranted "[w]here an individual is forced to seek judicial assistance to secure a clearly defined and established right, which should have been freely enjoyed without such intervention." (Quotation omitted.) Although the trial court observed that it "stop[ped] short of finding bad faith," it ruled that:

> an award of attorney's fees in this matter is appropriate because the State has always promised to pay, yet never has. . . . This lawsuit was necessary to enforce compliance with the statute and to compel the State to comply with promises and representations it made to both the Court . . . and Plaintiffs . . . .

The court gave Bedford thirty days "to file an affidavit outlining its request for reasonable attorney's fees."

On April 27, 2017, the legislature passed HB 354-A, which appropriated $4,287,533 to Bedford. The bill provided that:

> Acceptance of a disbursement by a municipality under this act shall constitute a waiver and full release of any and all claims it may have against the state of New Hampshire . . . arising out of the state's adequate education payments between September 1, 2008 and June 30, 2016.

Laws 2017, 28:1. On May 1, the State wired the $4,287,533 to Bedford.

3

Shortly thereafter, Bedford's attorney submitted an affidavit in support of its request for attorney's fees. In response, the State argued that an award of attorney's fees was "unwarranted." The State alternatively argued that, "Bedford released its claim for attorney's fees when it accepted, without protest or reservation, the funds made available to [it] via HB 354-A." On June 19, the court ordered the State to pay Bedford $21,479 in attorney's fees that were "directly attributable" to the "State's schizophrenic representations and litigation strategy in this case." This appeal followed.

On appeal, the State argues that the trial court unsustainably exercised its discretion in awarding Bedford attorney's fees because the exception to the general rule that each party pays its own attorney's fees cannot be applied in the absence of a finding that the losing party has acted in bad faith. See Harkeem, 117 N.H. at 690-91. The State also argues that, even if the award of attorney's fees was adequately supported by the record, it should be vacated because "Bedford waived its claim for fees when it accepted the payment offered by HB 354-A." Bedford counters that the trial court sustainably exercised its discretion in awarding attorney's fees because Harkeem does not require an explicit finding of bad faith and, alternatively, the fee award could be affirmed on other grounds. Bedford also argues that its receipt of funds from the State did not operate as a waiver of its right to an award of attorney's fees. Because we conclude that, by accepting funds appropriated by HB 354-A, Bedford waived its right to an award of attorney's fees, we need not decide whether the trial court's award of those fees was a sustainable exercise of discretion.

As a threshold matter, Bedford contends that the State did not properly preserve for appeal the issue of waiver because it did not argue waiver in its summary judgment pleadings. Bedford further argues that, "even if the argument was timely made but not considered, the State was obligated to move for reconsideration . . . in order to preserve this argument for appellate review." We disagree. HB 354-A did not become effective until April 27, 2017, and Bedford did not receive the appropriated funds until May 1. On May 18, when responding to Bedford's affidavit and request for fees, the State argued that "Bedford's claim for attorney's fees should . . . be denied in its entirety . . . [because] by accepting the funds provided by HB 354[-A], Bedford released the State from that claim." To preserve an argument for judicial review, we generally require issues to be raised at the earliest possible time because trial forums should have a full opportunity to come to sound conclusions and correct errors in the first instance. See Sklar Realty v. Town of Merrimack, 125 N.H. 321, 328 (1984). Here, because the State raised the issue of waiver at the earliest possible time, and the trial court implicitly rejected the State's waiver argument when it awarded fees, we conclude that the waiver argument is preserved.

4

Addressing the parties' waiver arguments requires us to engage in statutory interpretation. In matters of statutory interpretation, we are the final arbiters of the legislature's intent as expressed in the words of the statute considered as a whole. State v. Actavis Pharma, 170 N.H. 211, 217 (2017), cert. denied, 138 S. Ct. 1261 (2018). When interpreting statutes, we ascribe the plain and ordinary meanings to the words used. Id. Our goal is to apply statutes in light of the legislature's intent in enacting them and in light of the policy sought to be advanced by the entire statutory scheme. Id.

Bedford first asserts that, because the funds were "provided by wire transfer," Bedford did not "accept" them within the meaning of the statute. The State counters that Bedford "fails to explain how receiving those funds by wire transfer (without protest or reservation as far as the record indicates) differs from an 'acceptance' of them." We agree with the State.

HB 354-A does not define "acceptance." When a term is not defined in a statute, we look to its common usage, using the dictionary for guidance. See K.L.N. Construction Co. v. Town of Pelham, 167 N.H. 180, 185 (2014). Webster's Third New International Dictionary defines "acceptance" as "an agreeing either expressly or by conduct to the act or offer of another so that a contract is concluded and the parties become legally bound." Webster's Third New International Dictionary 11 (unabridged ed. 2002). Black's Law Dictionary defines "acceptance" as "[a]n offeree's assent, either by express act or by implication from conduct, to the terms of an offer in a manner authorized or requested by the offeror, so that a binding contract is formed." Black's Law Dictionary 14 (10th ed. 2014). Here, Bedford acknowledges that "[o]n May 1, 2017, the State paid the $4,287,533.00 due to [Bedford]." Moreover, at oral argument, Bedford conceded that at the time it received the payment, "the town was absolutely aware of the language in HB 354[-A]." Accordingly, we conclude that Bedford "accepted" the funds within the meaning of HB 354-A when it received the funds, with full knowledge that HB 354-A contained a waiver provision, yet did not return the payment, hold the funds in escrow, or inform the State that, although it intended to keep the funds, it did not intend to waive its claim for attorney's fees.

Bedford next argues that it did not waive its right to an award of attorney's fees because the funds that it received from the State were not disbursed pursuant to HB 354-A, but rather were "wired . . . in compliance with the Superior Court's Order." The State counters that "the fact that the court ordered the State to pay Bedford the shortfall in adequacy aid . . . does nothing to change the fact that the funds to make the payment were disbursed by HB 354-A." We agree with the State. We construe Bedford's argument as an assertion that, as a matter of law, payment could not be disbursed pursuant to HB 354-A and, at the same time, comply with the trial court order. Bedford cites no legal authority for this proposition, and we see no reason why the fact that the trial court ordered the payment means that the payment could

not also be disbursed pursuant to, and subject to the conditions set forth in HB 354-A. The two need not be mutually exclusive. On April 6, 2017, the trial court ordered the State to pay Bedford. On April 27, the legislature appropriated the funds to be paid to Bedford and other municipalities. Laws 2017, 28:1. HB 354-A states "the commissioner of the department of education <u>shall</u> disburse a lump sum to each municipality as follows: . . . Bedford $4,287,533." Laws 2017, 28:1 (emphasis added). The State paid Bedford $4,287,533 on May 1. We conclude that the payment was disbursed pursuant to HB 354-A.

Bedford also contends that we should reject the State's waiver argument because "[t]he State does not explain how passage of HB 354[-A] on April 27, 2017 could change the Superior Court's April 6, 2017 Order awarding fees. HB 354[-A] was only effective after April 27, 2017 or three weeks after the Superior Court already awarded fees . . . ." The State responds that "even if the trial court correctly ruled that Bedford was entitled to its attorneys' fees, the final order awarding those fees should still be vacated because, by operation of the plain language of HB 354-A, Bedford has waived that claim." We agree with the State. As explained above, notwithstanding the fact that the trial court ordered the State to pay Bedford's attorney's fees, Bedford waived its right to those fees when it accepted funds disbursed by HB 354-A.

Bedford also argued that the receipt of funds did not operate to waive its right to attorney's fees because the attorney's fee claim is not a claim "arising out of the state's adequate education payments between September 1, 2008 and June 30, 2016." Laws 2017, 28:1. Bedford contends that the waiver provision in "HB 354[-A] simply does not apply" because the trial court awarded attorney's fees "as a result of the State's contradictory representations regarding the applicability of the Stipulation," not because of "the State's failure to make the constitutionally required funding payments." The State counters that, "[b]y the plain terms of the statute," Bedford waived its right to attorney's fees because these fees were "incurred in seeking to recover its 'capped' adequacy payments from fiscal year 2016." We agree with the State. Although the trial court awarded fees based upon the "litigation strategy employed by the State," the underlying case was brought to recover adequacy payments. Bedford acknowledged as much in its motion for summary judgment: "This case concerns RSA 198:41, [III](b) and the State's constitutional obligations under Part II, Article 83, of the New Hampshire Constitution to fund a constitutionally adequate education for . . . the 2016 . . . Fiscal Year[]." Therefore, we conclude that the award of attorney's fees falls within the scope of the statutory waiver, as it is a "claim[] . . . arising out of the state's adequate education payments between September 1, 2008 and June 30, 2016." Laws 2017, 28:1.

At oral argument, for the first time, Bedford advanced two additional arguments as to why its receipt of funds from the State did not operate to waive

6

its right to attorney's fees: first, because RSA 198:42, II allows money from the general fund to be used to pay for adequate education grants under certain circumstances, in fact the funds may not have been disbursed pursuant to HB 354-A, RSA 198:42, II (Supp. 2017); and, second, HB 354-A gives rise to a "separation of powers problem" because, by including the waiver provision, the legislature effectively nullified a trial court order. Because both of these arguments were raised for the first time at oral argument, we decline to address them. See In the Matter of Gendron & Plaistek, 157 N.H. 314, 319-20 (2008) (stating that we generally decline to address issues raised for the first time at oral argument because neither the parties nor the court will be prepared to discuss an issue not addressed in the briefs).

Accordingly, for the reasons set forth above, we conclude that Bedford waived its right to an award of attorney's fees.

Reversed.

LYNN, C.J., and HICKS and HANTZ MARCONI, JJ., concurred.